251 F.2d 282
 BROTHERHOOD OF RAILROAD TRAINMEN, Appellant,
v.
Charles V. SMITH, and Order of Railway Conductors and
Brakemen General Committee of Adjustment for the Baltimore
and Ohio Railroad and The Baltimore and Ohio Railroad
Company, a Maryland corporation, Appellees.
 No. 13069.
 United States Court of Appeals Sixth Circuit.
 Jan. 2, 1958.
 
 J. A. Culbertson, Cincinnati, Ohio, for appellant.
 Charles A. Hastings, Cedar Rapids, Iowa (Joseph A. Segal and David W. Goldman of Paxton & Seasongood, Cincinnati, Ohio, V. C. Shuttleworth, of Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on the brief), for appellees.
 Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.
 ALLEN, Circuit Judge.
 
 
 1
 This appeal arises out of an action praying for an injunction against defendant The Baltimore and Ohio Railroad, hereinafter called the Railroad, on behalf of plaintiff Smith and others similarly situated. The case arises out of the following facts which, for the most part, are stipulated:
 
 
 2
 Smith had been employed as a trainman on the Railroad since 1929, and was a member of the Brotherhood of Railroad Trainmen, a voluntary labor association, hereinafter called BRT. Pursuant to the Railway Labor Act as amended, 45 U.S.C., Section 152, Eleventh, 45 U.S.C.A. 152, subd. 11, BRT negotiated a Union Shop Agreement with the Railroad effective October 1, 1951, to date. On August 6, 1944, Smith was promoted to the status of conductor on the Railroad. Thereafter he performed dual service in the capacity of both trainman and conductor, but at the time this case was filed he was regularly assigned as conductor. The Order of Railway Conductors and Brakemen, joint plaintiff, hereinafter called ORC, an organization of national scope organized under the Railway Labor Act, did not have a union shop agreement with the Railroad, but since 1927 it had been the exclusive representative of all men employed by the Railroad of the craft and class of conductors, being their certified bargaining representative. Smith under the collective bargaining contract between ORC and the Railroad, started to acquire seniority rights as a conductor at the time of his promotion on August 6, 1944. July 1, 1952, Smith ceased to maintain his membership in BRT, and was cited by BRT July 28, 1952, for noncompliance with the Union Shop Agreement. After the usual administrative proceedings decision was rendered against Smith June 4, 1956. It was determined that Smith had violated the Union Shop Agreement between BRT and the Railroad, and Smith was notified by the Railroad that his employment would be terminated June 14, 1956. Twenty other employees some of them residing outside the Circuit, who have performed dual service with the Railroad as both trainmen and conductors, are subject to discharge because of noncompliance with the BRT Union Shop Agreement, nine of them having been so notified. The complaint prays for relief for Smith and for all other employees of the Railroad similarly situated belonging to the craft and class of conductors represented by ORC, and for permanent injunction.
 
 
 3
 The District Court granted the injunction. It held that the Union Shop Agreement between the Railroad and BRT, as interpreted and applied by the parties, is invalid and in violation of the Railway Labor Act as amended, particularly Section 2, Third, Fourth, Seventh, Ninth and Eleventh, to the extent that the agreement destroys the employment and seniority rights of Smith and others similarly situated as conductors and as members of the craft and class of conductors.[1] It held that the termination of the employment and seniority rights as conductors, of the plaintiffs and others similarly situated, because of noncompliance with the Union Shop Agreement between the BRT and the Railroad, is unlawful under the Railway Labor Act as amended. It held that the controversy does not involve or require the interpretation of the trainmen's Union Shop Agreement, inashmuch as there is no dispute between the parties to the agreement, the trainmen and the Railroad, as to its interpretation or application; that the National Railroad Adjustment Board therefore has no jurisdiction under Section 152, Ninth, and that plaintiff and others similarly situated are without an adequate administrative remedy. It also held that the ORC has no administrative remedy available under the Railway Labor Act, as the bargaining representative of the craft and class of conductors. It specifically held that, in so far as the discharges contemplated will terminate the employment and seniority as trainmen of plaintiff and others similarly situated, plaintiffs neither seek nor are entitled to relief with respect thereto. A permanent injunction was granted against the Railroad restraining it from terminating or taking any action to terminate the employment status and seniority of Smith and all other employees similarly situated as conductors because of their noncompliance with the Union Shop Agreement. A permanent injunction was issued against BRT restraining it from taking action to require termination by the Railroad of the employment and seniority as conductors of plaintiff and those similarly situated.
 
 
 4
 The Railroad did not appeal from the judgment and only the BRT, which had been allowed to intervene as party defendant, contests the judgment in this court. It was agreed by the parties that under usual railroad procedures the employees had dual but separate job status and seniority, both as conductors and trainmen. It was stipulated that the ORC is the exclusive bargaining representative of the craft and class of conductors and that the BRT is the exclusive representative of the trainmen.
 
 
 5
 The controversy presented arose out of the fact that in 1952, after the Union Shop Agreement had been consummated between the Railroad and BRT, Smith and others failed to pay dues to BRT. In accordance with the Union Shop Agreement, BRT then demanded that the employment status and seniority of plaintiffs be terminated. However, it demanded their discharge not only as trainmen but as conductors. The Railroad declares that it will terminate Smith's employment unless restrained and that this action will necessarily terminate Smith's employment and seniority as conductor as well as trainman.
 
 
 6
 The case thus presents a different problem from that of Pennsylvania Railroad Company v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480, and Pigott v. Detroit, Toledo & Ironton Railroad Company, 6 Cir., 221 F.2d 736. These cases involved suits by employees who had been discharged for noncompliance with a union shop contract, where the employees held jobs only in the same craft or class represented by the union. The instant controversy involves employees who have separate job status and separate seniority rights as both conductors and trainmen. We have one union seeking to enforce its union shop contract, not only against its own members, but against members of another union which has exclusive jurisdiction over the conductor relationship.
 
 
 7
 BRT urges that the case is not within the jurisdiction of the courts but must be handled exclusively by the National Railroad Adjustment Board. We think the District Court decided this question correctly. Since the controversy arises under the laws of the United States, 45 U.S.C., Section 151 et seq., 45 U.S.C.A. 151 et seq., the case is within the jurisdiction of the District Court, 28 U.S.C., Sections 1332 and 1337, unless under the Railway Labor Act jurisdiction is vested in one of the administrative boards.
 
 
 8
 BRT, relying upon adjudications which involve the interpretation of collective bargaining agreements and upon cases which cover jurisdictional disputes between separate unions, urges that the decision upon this point was reversible error.
 
 
 9
 While in such controversies the National Railroad Adjustment Board has exclusive jurisdiction (Slocum v. Delaware, Lackawanna & Western Railroad Company, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795), the decisions relating to the validity of railway labor agreements hold that the administrative remedy is not available. Here there is no question as to the interpretation of the Union Shop Agreement such as was present in the Slocum case, supra. The issue is not the meaning of the agreement which, in fact, is plain in its provisions and effect. The validity of the Union Shop Agreement as betweem BRT, the Railroad and the trainmen is not questioned. The issue is whether the BRT Union Shop Agreement is valid if interpreted and carried out by the Railroad and BRT so as to deprive Smith and others similarly situated of their employment as conductors. Decision of this issue depends upon the meaning of the statute and over such a question the federal courts have jurisdiction. In Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283, the Supreme Court held that when a contract between the union and the railroad produced an illegal result the courts, and not the National Railroad Adjustment Board, had jurisdiction.
 
 
 10
 As found by the District Court, the BRT is the exclusive bargaining representative of the craft and class of yard helpers, yard foremen, passenger and freight brakemen and flagmen, and switch tenders, collectively called 'trainmen.' While many employees represented by BRT have been employed as, worked as, and held seniority as conductors, the bargaining contract between BRT and the Railroad in no way purports to cover the craft and class of conductors. The construction sought by the Railroad and the BRT would enforce an unambiguous contract contrary to its plain purport, in violation of Section 2, Eleventh (a), of the Railway Labor Act. Cf. W. P. Brown & Sons Lumber Company v. Louisville & Nashville Railroad Company, 299 U.S. 393, 397-398, 57 S.Ct. 265, 81 L.Ed. 301. Since the issue is the validity and not the meaning of the contract, the court has jurisdiction. Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 226 F.2d 604, 607, certiorari denied 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839.
 
 
 11
 BRT's further contention that this case is similar to a jurisdictional dispute and hence falls within the administrative procedures of the Railway Labor Act is likewise without merit. Here there is no 'asserted overlapping of the interests of two crafts.' General Committee of Adjustment of the Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Company, 320 U.S. 323, 334, 64 S.Ct. 146, 151, 88 L.Ed. 76. BRT and ORC are not asserting any claim to jurisdiction over the same jobs or working positions, nor is there the slightest dispute as to the organization representing the employees concerned. The question posed is whether, under the Railway Labor Act, which authorizes a union shop agreement between a labor organization and a railroad as to the 'craft or class' represented by the labor organization, action can be taken cutting off seniority rights of employees in a different craft or class covered by a separate bargaining agreement and securing their discharge as to both types of employment. The administrative boards set up under the Act have no jurisdiction to determine such a question. Steele v. Louisville & Nashville Railroad Company, 323 U.S. 192, 204, 205, 65 S.Ct. 226, 233, 89 L.Ed. 173. While the instant case is factually different from the Steele case, supra, the principle declared is controlling. The Supreme Court there stated 'There is no question here of who is entitled to represent the craft, or who are the members of it * * *.' 'Nor are there differences as to the interpretation of the contract * * *.' It was there held that the court had jurisdiction in cases under the Railway Labor Act which involve a violation of the Act and the validity of an agreement under the Act.
 
 
 12
 BRT also contends that the court should not have granted injunctive relief. Since the plaintiffs, as conceded by the Railroad, have no administrative remedy and the facts are stipulated, the injunction should be sustained if the plaintiffs have a cause of action. As to the impropriety of the injunction much of BRT's argument is eliminated by the fact that the relief is prayed for only as to the rights of Smith and others as conductors and the court specifically limited the relief granted to such rights.
 
 
 13
 The fact that Smith and others in the same situation performing dual functions in separate crafts and classes of the Railroad failed to pay dues to BRT in 1952 and were cited for this noncompliance prior to the filing of this case clearly has no bearing upon the question whether they should be dismissed from employment as conductors in 1956, when they are members of the ORC, a labor organization natioal in scope organized under the Act, which has been and is the exclusive bargaining representative of the conductors.
 
 
 14
 Smith was employed as a conductor in 1944, eight years before he was cited by BRT and twelve years before his proposed discharge as a conductor. Under the ORC bargaining agreement Smith's rights as a conductor were established and accrued 'from date of promotion.' Rule 3, ORC agreement. Smith was assigned regularly as a conductor at the time of hearing but this, we think, is not decisive. The controlling consideration is that Smith's rights as a conductor and the rights of others similarly situated have been long established and are sought to be destroyed by the action of a labor union which has no bargaining rights affecting conductors. The question is whether these facts constitute a cause of action entitling plaintiffs to relief.
 
 
 15
 In urging that the injunction should have been denied BRT relies principally upon the proposition that under 45 U.S.C., Section 152, Eleventh (a), 45 U.S.C.A. 152, subd. 11(a), the carrier and the union are authorized to make agreements 'requiring as a condition of continued employment,' that within a stated period 'all employees shall become members of the labor organization representing their craft or class * * *.' The statutory phrase 'as a condition of continued employment' is written into the Union Shop Agreement. BRT argues that if the present injunction is permitted to stand Smith and those similarly situated will have continued employment with the Railroad in spite of their noncompliance with the BRT Union Shop Agreement. Section 152, however, requires the union to be the representative 'of the craft or class' of the employees who have designated it. Nothing in the statute permits one union to represent employees of a craft or class for which the union is not designated as representative. The result contended for is that a union whose union shop contract has been violated may deprive Smith and others not only of their seniority rights and employment in that union but also of seniority rights and employment covered by a union contract which Smith and others have not violated. In fact, ORC declares that Smith is a member in good standing with its organization and ORC appears as coplaintiff in this action opposing Smith's discharge as a conductor.
 
 
 16
 Reading the phrase 'as a condition of continued employment' in the context of the entire statute we think Congress did not contemplate nor authorize the result sought by BRT. Since Smith seeks protection only as a conductor, it is sufficient that when this action was filed he had already joined ORC.
 
 
 17
 In the light of the whole enactment we think the phrase 'continued employment' means continued employment in the craft or class covered by the BRT contract, that is, in the trainmen, and that the phrase has no reference to employment in a totally different craft or class such as that of the ocnductors even though the employer is the same.
 
 
 18
 If a union shop agreement is to have the effect contended for by BRT the statute should so provide. Such a purpose should not be read into the Railway Labor Act by implication. If such a drastic penalty for noncompliance with the union shop agreement of one craft or class is to be held valid and enforceable as to any and every other craft or class of railroad employees, the penalty should be based upon as express enactment of the Congress.
 
 
 19
 BRT's contention ignores the fact that BRT cannot legally negotiate with reference to conductors, and yet it has negotiated with the Railroad as to these conductors' rights. It ignores the further fact that ORC has the exclusive right to negotiate with reference to conductors and has not negotiated as to this controversy. It ignores the fact that ORC does not have a union shop contract with the Railroad and that Smith and others similarly situated have not violated the ORC contract. It asks that this court strike out material provisions from the statute and substitute material provisions not in the statute. As so construed the Union Shop Agreement is plainly invalid and the action contemplated thereunder by BRT and the Railroad is illegal. It follows that a valid cause of action is stated and the District Court rightly granted the injunction.
 
 
 20
 The judgment is affirmed.
 
 
 
 [1]
 Railway Labor Act-- 45 U.S.C. 152, 45 U.S.C.A. 152
 'Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. * * * it shall be unlawful for any carrier to interfere in any way with the organization of its employees * * *.
 'Seventh. No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed * * *.
 'Eleventh. * * * any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees * * * shall be permitted--
 '(a) to make agreements, requiring, as condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: * * *
 '(c) The requirement of membership in a labor organization * * * shall be satisfied * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; * * * Provided, * * * That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.'