Lafayette A. HOOSER and Ben Chace, Plaintiffs

v.

BALTIMORE & OHIO RAILROAD CO., a corporation, Defendant
and
Brotherhood of Locomotive Firemen and Enginemen, Intervening Defendant.

Fred H. SHIELS, R. D. Vernon, and Keith U. Clark, Plaintiffs

v.

L. Roy SMITH, individually and as representative of members of the Brotherhood of Locomotive Firemen and Enginemen, and its Local 762
and
BALTIMORE & OHIO RAILROAD CO., Defendants.

Nos. IP 58–C–29, 58–C–49.

United States District Court
S. D. Indiana,
Indianapolis Division.

Sept. 24, 1959.

George Rose, Indianapolis, Ind., for plaintiffs.

Martz, Beattey & Wallace, Indianapolis, Ind., for defendants.

Harold C. Heiss and Russell B. Day, Cleveland, Ohio, and Grabill & Baker, Indianapolis, Ind., for intervening defendant.

STECKLER, Chief Judge.

The complaint in Cause No. IP 58–C–29 was filed February 10, 1958, and that in cause No. IP 58–C–49 was filed March 21, 1958. Since both complaints assert rights dependent upon the same agreements and present common questions of law, the court under Rule 42(a), Federal Rules of Civil Procedure, 28 U.S.C., consolidates the two cases for the purpose of judgment.

The plaintiffs claim rights under the Railway Labor Act (45 U.S.C.A. § 151 et seq.), and, hence, the court has jurisdiction of both controversies as civil actions arising under a federal statute regulating and protecting commerce (28 U.S.C. § 1337). General Committee of Adjustment of Brotherhood of Locomo-

tive Engineers v. Missouri-Kansas-Texas Railroad Co., 5 Cir., 132 F.2d 91, reversed on other grounds, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76.

Prior to their dismissal by The Baltimore and Ohio Railroad Company (hereinafter referred to as "defendant Railroad"), the plaintiffs were employed by it as enginemen,[1] and they show that each held seniority as locomotive fireman and as locomotive engineer in that employment. The operating function of fireman is distinct from the operating function of engineer; and, therefore, each plaintiff contends that he possessed two separate employments with the defendant Railroad. Upon that supposition the plaintiffs contend that the Railroad had no right to terminate their total employment with it as enginemen, simply because it found them to be in violation of the union shop agreement with the Brotherhood of Locomotive Firemen and Enginemen (hereinafter referred to as "BLF&E"). Affirmatively they contend they had a contractual right to continue in the employment of the Railroad as engineers despite their violation of the BLF&E's union shop agreement and subsequent discharge because of this violation. Because the defendant Railroad, on the insistence of the BLF&E, has determined the existence of the aforesaid violations and has dismissed them from its service, plaintiffs sue the defendants jointly and severally to recover damages of $150,000 each for wrongful discharge.[2]

The defendants contend that the plaintiffs were in a fundamentally different legal situation, and that they each possessed only a single employment with defendant Railroad. Defendants concede that by virtue of promotion of plaintiffs into the craft of engineer, defendant Railroad had a right to assign them to duty as engineer in line with their seniority in that craft; and that when their seniority rank did not warrant engineer's duty the defendant Railroad could assign them to work in the firemen's craft.[3]

Defendants have shown that the Railroad has no custom or practice to employ any individual solely as an engineer.[4] Their argument is that all individuals are employed simply as an "engineman," namely, as a fireman who must also qualify (within a stipulated time) as an engineer. They point to rules of the applicable collective agreements which require a fireman to so qualify on penalty of losing his seniority as fireman and his employment with the Railroad, but they have not pointed to any rule which specifically provides that an individual must maintain his right to work as a fireman in order to retain his right to work as an engineer. On the other hand, the plaintiffs have not identified any rule in either of the collective agreements which states that any individual (particularly a fireman, after forfeiting that employment) has any distinct, separate right to continue in defendant Railroad's employment as an engineer. Rather, plaintiffs rely on Smith v. Baltimore & Ohio Railroad Co., D.C.S.D.Ohio, 1956, 144 F.Supp. 869, affirmed sub nom. Brotherhood of Railroad Trainmen v. Smith, 6 Cir.1958, 251 F.2d 282, for the proposition that any attempt by the BLF&E to affect their employment as engineers is contrary to the Railway Labor Act, and void.

1. The term "engineman" includes anyone in engine service, namely, engineers, firemen and hostlers. Taken together, those employments constitute one "class." (Luttman, 5, 40, 52–3; McManus, 16.)

2. In Cause No. IP 58–C–49 the BLF&E as a group is expressly made a party defendant. In Cause No. IP 58–C–29 that labor organization was not named as a party defendant, but the situation of the parties is the same as a result of the intervention by the BLF&E. Falls Industries, Inc. v. Consolidated Chemical Industries, 5 Cir., 1958, 258 F.2d 277, at page 286.

3. Engineers are a separate craft from firemen and hostlers even though they are together one "class." (See footnote 1.)

4. General Chairman McManus did not know of any individual employed by defendant Railroad exclusively as an engineer, and, in his opinion, such an employment would be an impossibility under the current collective bargaining agreements. (McManus, p. 8.)

Averring that all of the material facts are established beyond the possibility of genuine dispute, the defendants have moved for judgment under Rule 12(c), (d) and Rule 56, Federal Rules of Civil Procedure. Inasmuch as the court does find it necessary to refer to matters established by the depositions, exhibits, and stipulations, the court elects to proceed to summary judgment under Rule 56. Since this memorandum is designed to comprise the court's findings of fact and conclusions of law, proper but not required by Rule 52 of the Federal Rules of Civil Procedure (Griffith v. Baltimore & Ohio R. Co., D.C., 162 F.Supp. 809), a degree of particularity is desirable.

On[5] August 26, 1946, plaintiff Shiels in Cause No. IP 58–C–49 was employed by defendant Railroad as a fireman, and he was promoted to engineer on February 11, 1956. Thereafter he performed service as one or the other until March 24, 1956, when he was dismissed. As to plaintiff Vernon, the respective dates are November 17, 1944, February 9, 1951, and March 23, 1956; and as to plaintiff Clark they are August 2, 1947, March 1, 1956, and March 28, 1956. In Cause No. IP 58–C–29 these dates in respect to plaintiff Hooser are October 21, 1939, November 8, 1942, and March 24, 1956; as to plaintiff Chace they are February 3, 1942, February 14, 1946, and March 24, 1956.

The membership records of the five plaintiffs in the Brotherhood of Locomotive Engineers (hereinafter referred to as "BLE") and in the BLF&E were duly stipulated. Those facts are tabulated as follows:

| Plaintiff | BLF&E | | BLE | |
| --- | --- | --- | --- | --- |
| | Joined | Expelled | Joined | Expelled |
| Hooser | 3/5/40 | 8/2/49 | 8/11/49 | 6/30/52 |
| | | | 11/10/54 | 12/31/54 |
| Chace | 3/21/42 | 4/2/42 | 8/12/53 | 6/30/55 |
| | 6/16/42 | 10/2/42 | | |
| | 2/9/46 | 9/2/52 | | |
| Clark | 12/15/47 | 12/2/48 | Never a member | |
| | 12/27/51 | 8/2/53 | | |
| Vernon | 11/19/44 | 5/2/49 | Never a member | |
| | 4/19/50 | 1/2/51 | | |
| | 12/27/51 | 8/2/52 | | |
| Shiels | 9/29/46 | 10/2/48 | 11/10/54 | 5/31/56 |
| | 12/16/48 | 9/2/52 | 1/1/58 | Still a member |

On October 15, 1951, the BLF&E and the BLE, the respective bargaining representatives under the Railway Labor Act of the crafts of firemen and engineers on the defendant Railroad, entered into union shop agreements with defendant Railroad (Exhibit No. 1, pages 123–128, Luttman dep., p. 6; and Exhibit No. 1, pages 134–140, Scheid dep., p. 62). Although executed as separate agreements, the two were negotiated jointly, and are identical.[6] Both agreements require that the employees become members within sixty calendar days after the effective date "and thereafter shall maintain membership in the Brotherhood."

5. The complaint uses the expression "on or about" in all cases but the precise date is not important.

6. McManus dep., p. 17; comparison of them shows that only the names of the parties differ.

(Section 1) Membership in both the BLF&E and the BLE would thus appear to be required if employees were working part of the time as locomotive firemen and part of the time as locomotive engineers, but Section 2 of each agreement provides as follows:

"The requirements of membership provided for in Section 1 of this agreement shall be satisfied if any employee shall hold or acquire membership in any one of the labor organizations, other than the Brotherhood, national in scope, organized in accordance with the Railway Labor Act * * *"

There appears to have been no difficulty between the Brotherhoods about the joint application of the two agreements. If an engineman was a member of either the BLF&E or the BLE, neither of them legally could or would cite him; he would be considered as in compliance because of the provision in Section 2. But if he was not maintaining his membership in either organization,[7] then he would be cited by the BLE if he was currently working as an engineer, or by the BLF&E if he happened to be working as a fireman. (McManus, p. 18). During the extended period of negotiations leading to these two agreements it was the understanding of the two organizations that a violation of either union shop agreement would have the consequence of dismissal and loss of seniority in both crafts. (McManus, p. 20.)

That is what happened to each of the plaintiffs, namely, while working as firemen, and then being non-members in any qualified labor organization "national in scope,"[8] they were cited by the BLF&E for violation of the union shop agreement. Although the complaint in each case alleges that the plaintiffs were dismissed "solely because of an alleged failure" to comply with the union shop agreement of the BLF&E, the court finds that there is no genuine issue concerning the existence of a real violation by the plaintiffs of the BLF&E union shop agreement. It is known that the three plaintiffs in Cause No. IP 58–C–49 (Shiels, Clark and Vernon) intend no such issue because this court decided that exact issue against them in Cause No. IP 56–C–231 reported in Shiels v. Baltimore & O. R. Co., D.C.S.D.Ind.1957, 154 F.Supp. 917, affirmed 7 Cir., 254 F.2d 863; certiorari denied, 358 U.S. 846, 79 S.Ct. 71, 3 L.Ed.2d 80; rehearing denied 358 U.S. 896, 79 S.Ct. 155, 3 L.Ed. 123.[9] The allegations of the complaint in IP 58–C–29 are the same as those in IP 58–C–49; accordingly, none of the plaintiffs here are deemed to challenge the validity of the defendant Railroad's decision that they each violated the BLF&E's union shop agreement. The sole issue tendered by the plaintiffs is the contention that they had a contractual right to continue in the employment of defendant Railroad as engineers despite their adjudged violation of the BLF&E union shop agreement which terminated their right to employment as firemen. They argue that any attempt by the BLF&E to affect their status as engineers is contrary to the Railway Labor Act and void.

At the outset it must be noted that plaintiffs' rights to continued employment by the defendant Railroad depend upon the agreement between the BLE and defendant Railroad. Without such agreement, plaintiffs' employment would be at will, and discharge from employment would give rise to no causes of action. Thus, plaintiffs on their part must

---

7. Unless he was a member of some other qualified labor organization.

8. This controlling expression appears in the union shop amendment to the Railway Labor Act, now 45 U.S.C.A. § 152, Eleventh (c).

9. Defendants for sufficient reason deliberately refrained from the filing of a plea of res judicata. Nevertheless, the court observes that as far as these three plaintiffs are concerned, the present claim (attempting to invalidate a part of the same dismissal) is clearly an after-thought inspired by the decision in Smith v. Baltimore & Ohio R.R., D.C., 144 F.Supp. 869, affirmed Brotherhood of R.R. Trainmen v. Smith, 6 Cir., 251 F.2d 282, certiorari denied 356 U.S. 937, 78 S.Ct. 778, 2 L. Ed.2d 812.

show compliance with the agreement upon which they rely.

In support of their motion for summary judgment, defendants cite the failure of the plaintiffs to observe certain time limits imposed by the BLE collective agreement on the filing and processing of grievances by employees. These consensual limitations are pleaded as the Fifth and Sixth Defenses in the answer filed in Cause No. IP 58–C–29, and as the Seventh and Eighth Defenses in the answer filed in Cause No. IP 58–C–49.

Rule 27(d) in the BLE collective agreement provides that rosters containing the names of locomotive engineers employed by the defendant Railroad will be posted by the Railroad at conspicuous places in January and July of each year, and any error in the placement of a name on the roster, or its omission from the roster, will be subject to correction only if written protest is filed by the employee within sixty days from the date the rosters are posted. Defendants allege that plaintiffs failed to challenge in a timely manner the omission of their names from the engineers' seniority rosters, and, hence, are now foreclosed from asserting the loss of their seniority as engineers. The plaintiffs' rejoinder to this defense is that the places on the Railroad's property where the rosters were posted "were not available to them (plaintiffs)."

An important issue of fact bearing upon the adequacy of this defense thus appears to exist, and the court will decline to rule upon this defense in a summary judgment proceeding.

Quite apart and independent from Rule 27(d) in the BLE collective agreement, is another consensual limitation on the right of employees to assert claims or grievances based upon their dismissal by the defendant Railroad. This limitation is found in Rule 55 of the BLE collective agreement. Paragraphs (a) and (b) of Rule 55 pertain to claims and grievances generally, and read as follows:

"(a) All claims or grievances must be made in writing to the officer of the Company authorized to receive the same, by or on behalf of each individual employee, within sixty (60) days from the date of the occurrence on which the claim or grievance is based, and if not so made are barred.

"(b) The disallowance of any claim made as provided in paragraph (a), involving a claim for money, shall be made in writing within forty-five (45) days from the date the claim is so made. If not so disallowed, the claim shall be paid. Failure to so disallow a claim shall apply only to the individual claim involved and shall not be considered as a waiver of the contentions of the Company as to any other claim. Claims and grievances made as provided in paragraph (a) within sixty (60) days from the date of the occurrence and disallowed, shall be barred unless appeal from such disallowance is made in writing by the employee or his duly authorized representative to the proper officer of the Company within sixty (60) days from the date of notice disallowing the claim."

Paragraph (f) of Rule 55 is specifically applicable to grievances "involving dismissal of an employee from the service of the Company," and reads as follows:

"(f) With respect to claims and grievances involving the dismissal of an employee from the service of the Company, the notice of claim provided for in paragraph (a) shall be given to the Superintendent having jurisdiction over the territory in which the employee was working at the time of occurrence resulting in his dismissal, and the provisions of paragraph (b) shall not apply to such cases. After the decision of the Superintendent the provisions of paragraphs (d) and (e) will apply. With respect to any claim or grievance involving the dismissal of an employee where no claim is made for compensation of any kind, request for restoration to service may be presented to the Superintendent at any time within one (1) year from

the date of the occurrence which resulted in the dismissal, and if not made within that time the request shall be barred. In the event the Superintendent denies such request it may then be handled as provided for in paragraphs (d) and (e), but the limitations in those paragraphs shall not begin to run until one (1) year after such denial. The Superintendent referred to in this paragraph means a Superintendent of The Baltimore and Ohio Railroad Company or one of the lines of railroad operated by The Baltimore and Ohio Railroad Company."

Thus, Rule 55 provides that if a grievance follows the dismissal of an engineer and the grievance includes a claim for loss of compensation, the grievance must be submitted in writing to the proper officer of defendant Railroad within sixty days from the date of dismissal. If the grievance consists only of a demand to be returned to service, the employee has one year from the date of dismissal in which to request the Superintendent, under whom he was working at the time of dismissal, to restore him to service. In either instance, Rule 55 clearly states that if the employee fails to make his request with the proper officer within the prescribed period, "the request shall be barred."

Mr. Charles R. Scheid, the defendant Railroad's road foreman of engines on the Indianapolis Division where plaintiffs Shiels, Chace and Hooser were employed, testified by deposition that no complaint was received from these plaintiffs at the superintendent's office within a year after their dismissal, questioning the right of the defendant Railroad to terminate plaintiffs' employment rights as engineers at the same time that it terminated their employment rights as firemen. Similarly, Mr. W. W. Frey, the defendant Railroad's road foreman of engines on its Monongah Division, states through an affidavit filed in support of defendants' motion for summary judgment that plaintiffs Vernon and Clark were employed on the Monongah Division and that no complaint was ever lodged by these plaintiffs with the Superintendent against the loss of their employment rights as engineers.

■■ Contractual limitations on the period of time within which grievances may be processed or suits may be instituted in a court of law or before an administrative tribunal are generally considered valid and enforceable. Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687, 173 A.L.R. 1107. A large number of decisions involving the enforcement of contractual limitations are collected in an annotation at 121 A.L.R. 758. Contractual limitations have been recognized as valid and binding in the State of Indiana where the plaintiffs' employment contracts were made and this controversy arose. Meyer v. Building & Realty Service Co., 209 Ind. 125, 196 N.E. 250, 100 A.L.R. 1442; Prudential Insurance Co. v. Myers, 15 Ind.App. 339, 44 N.E. 55.

■ Contractual provisions in collective bargaining agreements which limit the time within which employees must submit money claims or grievances to some specific officer or representative of the employer have generally been held to be valid and binding on the employees.

In Wallace v. Southern Pacific Co., D.C., 106 F.Supp. 742, the plaintiffs failed to observe a 60-day limitation on the period within which a grievance caused by a dismissal from employment might be filed with the employer. The court held that an action for damages based upon a dismissal in alleged violation of the terms of the collective agreement was barred.

Failure by the employee to give his employer notice within ten days of his dismissal that he intended to present a grievance based upon the dismissal precluded the employee from maintaining a suit in the case of Barker v. Southern Pacific Co., 9 Cir., 214 F.2d 918. Other decisions with similar holdings are Justice v. Southern Railway Co., D.C., 143 F.Supp. 724; Breeland v. Southern Pac.

Co., 9 Cir., 231 F.2d 576; Peoples v. Southern Pac. Co., D.C., 139 F.Supp. 783, affirmed 9 Cir., 232 F.2d 707; Anson v. Hiram Walker & Sons, 7 Cir., 248 F.2d 380; Connors v. Boston & Maine R.R., D.C., 163 F.Supp. 490; Crusen v. United Air Lines, D.C., 141 F.Supp. 347.

■ Since the plaintiffs herein rely upon provisions in the BLE's collective agreement as the source of their seniority and employment rights as engineers, they are not at liberty to disregard other provisions of the agreement which impose on the employees conditions attached to the enjoyment or protection of these rights. This requirement of the law is aptly stated in the decision in Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88, 93, as follows:

"We think that she (plaintiff) must take the bitter with the sweet and cannot select and rely upon one provision of the agreement which is to her advantage and at the same time reject or ignore another provision which limits or is a condition to the exercise of the provision which she invokes."

■ There is no dispute in the record before this court about the fact that the plaintiffs did not assert a claim to separate employment as locomotive engineers, after having lost their employment rights as firemen, within either the 60-day period or the 1-year period prescribed by Rule 55. This court is, therefore, compelled to sustain the defenses based upon the time requirements prescribed by Rule 55.

There is another reason why three of these five plaintiffs have no cause of action based upon their failure to comply with the agreement upon which they bring suit. In Cause No. IP 58–C–49 the plaintiffs have attempted to state the performance by them of their primary obligations under the collective bargaining agreement. In Cause No. IP 58–C–29, in paragraph 15 of the complaint an identical allegation is made. In substance they allege that they performed their work, labor and services for the Railroad in a good and workmanlike manner up to the time of their dismissals, however that allegation embraces a conclusion of law inconsistent with the undisputed facts of record. At the time of their respective dismissals, only plaintiff Shiels, a member of the BLE, was a member of any labor organization "national in scope," as required by the union shop agreement. Plaintiff Clark, although not a member of BLE, was still within the 60-day grace period during which he could have joined. Two of them, Hooser and Chace, had held membership in the BLE subsequent to the initiation of the union shop violation charges, but their memberships had lapsed many months before their dismissals. Plaintiff Vernon never became a member of the BLE. Thus, none of these three plaintiffs at the time of their dismissals had performed the condition of legal availability for service specified in the collective bargaining agreement upon which they rely.

The plaintiffs in Cause No. IP 58–C–49, in paragraph 18 of their complaint contend that by virtue of the provisions of the collective bargaining agreement (the agreement on behalf of locomotive engineers made by the Railroad with the BLE which was introduced as Exhibit No. 1 with the Scheid deposition) they had a right to continue in the employment of the defendant Railroad. The plaintiffs in Cause No. IP 58–C–29, in paragraph 16 of their complaint make the same allegation. As shown above, however, only plaintiffs Shiels and Clark were legally available to perform service as locomotive engineers at the time of their dismissal.

■ The union shop agreement which appears at pages 134–140 of the aforesaid Exhibit No. 1 is an integral part of the collective agreement. Other rules, rates of pay and working conditions, including those relied upon by the plaintiffs for their asserted right to continue in the Railroad's employment, are set forth upon the preceding pages of this printed collective bargaining agreement. Like the rules added by the union shop agreement, most of the preceding

rules were negotiated separately in earlier decades by the same parties. Accordingly, Section 1 of the union shop agreement which required that the plaintiffs "shall maintain membership in the Brotherhood," unless they had alternative membership as provided in Section 2 of that agreement, is a rule of equal dignity with those which constitute the provisions of Rule 27 dealing with seniority (see pages 82–83), which are the basis of the plaintiffs' assertion of their right to continuing employment.

■■ Assuming that the allegations by the plaintiffs are sufficient allegations of the performance of conditions precedent set forth in the contract in suit, it is plain that the conclusion cannot be credited by the court in view of the admission that three of the five plaintiffs had not maintained their legal availability to serve in the capacity of locomotive engineer. Availability for service is a primary condition precedent of railroad operating employees, including engineers. If locomotive engineers are not available to perform service at the proper time and place, they may be dismissed for their failure, absent a proper excuse. This is established by many awards of the First Division of the National Railroad Adjustment Board, which determines grievances involving railroad operating employees. Brotherhood of Sleeping Car Porters v. Atchison, Topeka & Santa Fe Railway Co., Award No. 848 (Referee Ferguson); Trainmen v. The Baltimore and Ohio Railroad Co., Award No. 16709 (Referee McMahon), and many others. See Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460. Of course, in Indiana in order to maintain a suit for breach of contract the plaintiff must be able to show that he has performed all of the conditions on his part to be performed. Section 2–1039, Burns' Indiana Statutes Annotated, 1933; Walker v. Sawyer's Estate, 1904, 34 Ind.App. 239, 70 N.E. 540; and Parker Land & Improvement Co. v. Ayres, 1909, 43 Ind. App. 513, 87 N.E. 1062.

■ Although defendants' joint motion for summary judgment must be sustained for the foregoing reasons, it would not be amiss for the court to comment briefly on the merits of these cases, especially since the merits have been explored fully in the briefs, affidavits, depositions, stipulation, and oral arguments.

Plaintiffs rely on Smith v. Baltimore & Ohio Railroad Co., supra, but allege breach of contract and a controversy involving different crafts. The crafts in Smith were trainmen and conductors; the crafts here are firemen and engineers. In Smith, the parties agreed that the employees had dual but separate job status; that point is not so clear as between firemen and engineers.

The rules in the two agreements which regulate the transfer of employees between the firemen's and engineers' crafts are closely correlated. These rules provide that engineers shall be acquired by promoting them from the craft of firemen. (McManus, p. 6.) So long as there are firemen available for promotion to engineer (i. e., men who have passed their qualifying examinations), new engineers must be recruited from the firemen's list.[10] The defendant Railroad has not hired one engineer from outside sources during the last twenty years or longer (id., p. 34). In addition to the right of firemen to be promoted to engineer, there is also an obligation upon firemen to qualify for and take promotion to engineer. (McManus, pp. 6–7.) This arrangement with the railroad is called the "forced promotion rule" of the BLF&E schedule. (Luttman, pp. 32–33.) Firemen are required to qualify for promotion to engineer in three steps, and if they fail at any stage they are dropped from the defendant Railroad's service. During a fireman's second year of employment he must pass the "second-year progressive examination." (Rule 22(a), Luttman, p. 11.) This has been a stand-

---

10. Firemen's Rule 16(a), Luttman, pp. 7, 34.

ard requirement for more than thirty years. Next, there is an examination known as "third-year machinery." (Rule 22(d), id. 11.) This Third examination is taken within six years, and the fireman is allowed three trials. (Id. 12.) The penalty for failing to take or to pass promotion examination is dismissal from the service. (Id. 12.)

Although a fireman finally achieves a status and seniority date as an engineer only after he begins to perform regular service as an engineer, the rules of the agreement protect and enforce the seniority ranking of men as engineers in the exact sequence of their seniority as firemen. Firemen's Rule 16(a) provides that they shall hold "the same relative standing." (Id. 8–9.) The Engineers' agreement provides that a junior fireman used as engineer in emergency will establish an engineer's date for the proper candidate "by proxy." (McManus, p. 9.) This result is also required *by the Firemen's agreement*. (Id. 9–10.)

Besides being compelled to accept promotion to engineer, the engineer must work whenever work is available because the rules require him to use his seniority as engineer whenever he can hold a job as engineer. The rules in both agreements provide that engineers will not be removed from the engineers' working lists and demoted to firemen so long as engineers in regular service are able to make a certain minimum mileage per month. (Luttman, pp. 18–19, Rule 32, BLE and BLF&E agreements.)

The agreements further provide that an engineer taken off the engineers' working lists because of lack of need for his service as engineer will be returned to work as engineer just as soon as it can be shown that the engineers in regular service are making a specified number of miles per month. (Rule 32(d), Engineers' and Firemen's agreements.)

The requirement that an engineer must work when his seniority enables him to hold a job as engineer is further emphasized by Firemen's Rule 16(g–1), which provides that no "demoted engineer" [11] will be permitted to hold a run as fireman while any junior engineer is holding a job on that seniority district as an engineer. (McManus, p. 11; Luttman, p. 13.) An exception to this requirement may occur under Rule 16(g–2). If this rule is put into effect after being approved by a vote of the employees to be affected, a demoted engineer may continue to hold a job as fireman unless a junior engineer working out of the demoted man's "home terminal" is holding a job as engineer. In other words, the requirement stated in the alternative Rule (16(g–2)) applies only when a junior man holds an engineer's assignment on a run operating out of the demoted man's home terminal. (McManus, pp. 11–12; Luttman, pp. 14–16.) It may be significant that this local option rule is adopted on a particular seniority district only if *both* the engineers and the firemen on such district vote to place it in effect. (McManus, p. 11.)

The BLF&E agreements refer to the employment of "hired engineers"—engineers transferred from one seniority district to another, or hired from one railroad by another railroad. A hired engineer must begin his employment at the foot of the engineers' seniority roster. (Luttman, p. 34; Rule 16(h) Firemen's Agreement; Rule 27(g) Engineers' Agreement.) The last time a hired engineer was employed by the defendant Railroad was during World War I. The rules provide that the transferee acquires a date as *fireman* simultaneously with his employment as *engineer* on the new division. (Rule 16(k); Luttman, pp. 17, 45; McManus, p. 29.) Thus, these rules appear to be meticulously framed to insure that in all cases an employee will hold seniority in both crafts of the class of "enginemen" and will consistently exercise his seniority in the firemen's craft if he is unable to hold a job in the engineers' craft.

---

11. A demoted engineer is an employee possessing an engineer's date but working as a fireman after a reduction; Luttman, p. 26.

From the practical standpoint of railroad management there is said to be sound operating reason for this long-established intermixing, as it were, of the rules in the Firemen's and Engineers' agreements. General Chairman Luttman, who has had a typical experience of moving back and forth from engineer to fireman as many as thirty-five times during an 11-year period, remaining sometimes as a fireman as long as two years at a stretch, testified that he could not have maintained his competence as an engineer if he had not been working as a fireman during the extended periods when he could not work as an engineer. He further testified that an engineer can perform his duties capably and effectively only by maintaining a constant familiarity with the lines of the railroad over which he must operate, its signal systems, and the characteristics of a variety of locomotive power he must be prepared to operate. (Id. pp. 23–24, 39.)

The two collective agreements are spliced together at another important point, to-wit, the so-called mileage regulation rules. Rules 32 in both agreements are substantially alike. The employees in the two crafts have a joint practical interest in these rules, for they are designed to effect a fair division of the available work among the engineers and firemen. When defendant Railroad's business expands, demoted engineers normally prefer to move up to the engineers' craft to share in the greater aggregate of this work. When business contracts, the firemen as a group are adversely affected if the junior engineers, who normally hold assignments as extra and pool engineers, are reduced too rapidly and drastically. On defendant Railroad this regulation of mileage demands and receives joint supervision by the two unions. (McManus, pp. 14–15, Luttman, p. 36.)

The two General Chairmen were positive that the rules of their agreements do not provide or contemplate that an employee shall hold seniority only as an engineer. (McManus, p. 8; Luttman, p. 16.) The rules provide for only one situation where an employee may continue in service exclusively *as a fireman*. This situation develops only when an employee is "reduced to fireman" for incompetency or as discipline, but in such case the firing assignments he is permitted to hold are restricted to the least important of the pool-freight jobs, or to switching service in the yards. (Rule 52, Luttman, pp. 24–25.)

Construing the two agreements together in accordance with the daily practice of the signatories to these agreements, the maxim *expressio unius est exclusio alterius* is applicable. Thus, the agreements do not appear to contemplate that an employee may continue in service exclusively as an engineer.

The two General Chairmen testified that throughout their many years of employment on the defendant Railroad many enginemen have been discharged for violating some provision of the collective agreement under which they were then working, either as engineer or fireman, or for violating some operating rule promulgated *ex parte* by the defendant Railroad. These discharges have always been total and complete. The rules of the two collective agreements appear not to have been interpreted at any time by the contracting parties so as to permit a discharged fireman to continue his employment as an engineer, or to permit a discharged engineer to continue working as a fireman. (McManus, p. 33; Luttman, p. 38.)

It is doubtful if the Railway Labor Act's provisions for the representation of a "craft or class" by a labor organization representing that craft, should be interpreted to upset a long-standing, practical arrangement for the training and maintenance of continued competence among firemen and engineers.

There being no genuine issue as to any material fact, and the defendants being entitled to judgment as a matter of law, the court sustains the joint motion of the defendants for summary judgment in each of the above cases.