Lewis **CROCKETT** et al., Appellants,

v.

**UNION TERMINAL COMPANY**, Appellee.

No. 15689.

Court of Civil Appeals of Texas.

Dallas.

Dec. 16, 1960.

**130**

Witts, Geary, Hamilton, Brice & Lewis and Ray G. Besing, Dallas, for appellants.

Jackson, Walker, Winstead, Cantwell & Miller, and Donald C. Fitch, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellants Lewis Crockett, Arba Johnson, Samuel Cole and Willie Hervey sued appellee The Union Terminal Company, a corporation (hereinafter referred to as Carrier) for damages resulting from alleged wrongful discharge from employment. The appeal is from a summary judgment in favor of Carrier.

The facts are developed by means of affidavits and depositions.

Appellants were formerly employed by Carrier as baggage and mail handlers or porters. They were on the "Extra Board", a rotating pool of employees who perform extra work during peak periods of activity, or temporarily fill the positions of regularly assigned baggage and mail porters who are absent from work due to sickness or other causes.

The employment of appellants must be considered in connection with certain collective bargaining agreements between Carrier and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. The first agreement, known as the *General Clerk's Agreement*, which has been amended from time to time, was entered into March 1, 1922. This agreement includes Rule 27, entitled "Discipline and Grievances", which provides for an investigation and hearing before any employee may be "dismissed from service", and provides also that a decision shall be made within ten days, after which an appeal may be taken.

The second agreement, known as the *Extra Board Agreement of 1950*, entered into between Carrier and the Brotherhood, grew out of the need of Carrier for a pool of extra labor at the beginning of each of the three daily employment shifts. This agreement provided for the formation of the extra pool and laid down rules governing its operation. Paragraph 7 of this agreement is relied on by Carrier, so we quote from it:

"Employees working on the Board who refuse to report for extra work as herein provided will be considered out of the service of the Carrier; except when on authorized leaves of absences; by permission of the Carrier's representatives; or due to sickness of themselves or the immediate members of their families."

Appellee Carrier alleges that by agreement between the designated representatives of Carrier and the Brotherhood, or in the alternative, by custom, practice and usage, the meaning, effect and application of the above quoted paragraph 7 of the *Extra Board Agreement* is this: If any extra board porter for any reason, other than the three reasons specifically excepted therein, fails to report in person ready for work at 6:00 o'clock a. m., 2:00 o'clock p. m., or, 5:00 o'clock p. m., the starting times of the shifts, or within 60 minutes thereafter, his employment is deemed automatically terminated, without such termination being considered a "dismissal from service" for which a hearing is prerequisite under the General Clerks Agreement of 1922.

The third agreement, known as the *National Agreement*, was entered into August 21, 1954 between the railroads and carriers represented by the Carriers' Conference Committees, and employees of such carriers represented by railway labor organizations to which they belong through the Employees' National Conference Committee. This is a labor agreement between nearly all of the United States railway carriers, including appellee Carrier, and nearly all non-operating railway unions, including appellants' Brotherhood.

Article V of the *National Agreement* is entitled "Time Limit on Claims Rule." Paragraph 1(c) of Art. V contains this provision:

"All claims or grievances involved in a decision by the highest designated officer shall be barred unless within 9 months from the date of said officer's decision proceedings are instituted by the employee or his duly authorized representative before the appropriate division of the National Railroad Adjustment Board or a system, group or regional board of adjustment that has been agreed to by the parties hereto as provided in Section 3 of the Railway Labor Act."

Paragraph 5 of Article V is as follows:

"This agreement is not intended to deny the right of the employees to use any other lawful action for the settlement of claims or grievances provided such action is instituted within 9 months of the date of the decision of the highest designated officer of the Carrier."

In connection with its motion for summary judgment Carrier presents affidavits to the effect that appellants Crockett and Johnson, each of them on a certain occasion, failed to report for work without permission to be absent, and appellants Hervey and Cole, each of them, on a certain occasion, were more than 60 minutes late in reporting for work without permission to be late, and as a result thereof the employment of appellants as members of the Extra Board was automatically terminated.

Appellants filed controverting affidavits in which they assert that they did have permission to be absent and late respectively with respect to the shifts named in Carrier's affidavits.

It is undisputed that appellants did not file this suit within 9 months from the date of the adverse decision of the highest designated officer of Carrier.

## Opinion.

Appellants correctly assert in their four points on appeal, that the opposing affidavits in this case raise fact issues as to whether appellants were absent from work, or more than 60 minutes late in reporting to work without permission to be absent or late. If our decision turned on that question we would have to reverse the trial's court summary judgment and remand the cause for trial on the merits. But it is on other grounds that Carrier undertakes to support the summary judgment—grounds which, if sustained, render immaterial the fact issues above mentioned.

■ Before discussing Carrier's counterpoints we pause to notice that appel-

lants claim that the existence of the *National Agreement of 1954* has been denied under oath, thus raising a fact issue. We are unable to agree with appellants. The only sworn reference to the National Agreement by any of appellants was by appellant Crockett. He merely stated that the existence of the agreement was unknown to him, and that none of appellants had any knowledge of its existence. This does not meet the affidavit of Carrier's agents of the existence and terms of the *National Agreement of 1954*.

We shall first discuss Carrier's third counterpoint because it raises a jurisdictional question. In it Carrier says that the trial court had no jurisdiction of this action because it involves and requires interpretation of provisions of labor agreements made pursuant to the Railway Labor Act, therefore exclusive jurisdiction of the controversy lies in the National Railroad Adjustment Board.

■ This point is raised for the first time in Carrier's supplemental brief, which was filed in answer to appellants' supplemental brief. Nevertheless, the jurisdictional question so raised is fundamental in nature, and the point must receive our consideration.

In support of this point Carrier cites us to Section 3, First (i) of the Railway Labor Act, 45 U.S.C.A. § 153, First (i) and quotes from the opinion in Gainey v. Brotherhood of Railway and Steamship Clerks, 3 Cir., 275 F.2d 342, certiorari denied 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed. 2d 1153.

Carrier concedes that the holding in Moore v. Illinois Central Ry. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 is contrary to Carrier's present contention. But it says that the holding in the Moore case is no longer the law, as is made clear in the later Gainey case. We are unable to agree with Carrier.

■ It is significant that appellants in this case are not suing for reinstatement and back pay, nor are they disputing the wage rate by which Carrier paid them. They have accepted their discharge as final, and their suit is only for damages for alleged wrongful discharge.

The nature of the suit in the Gainey case was quite different. The Gainey case was an attempt to sue in court for mandatory injunction to compel the railroad to equalize wages paid to employees in its eastern and central divisions, and also to penalize the complainants' union for consenting to the unequal wage rates. The complainants, some 600 in number, were still in the employ of the railroad. The trial court rendered judgment against the employees and the Third Circuit Court of Appeals affirmed the judgment on the ground that under the circumstances the National Railroad Adjustment Board had exclusive jurisdiction of the suit. In support of its holding the Court cited Pennsylvania R. Co. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, and Union Pac. R. Co. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460. The opinion in the Gainey case does not mention the Moore case, which is relied on by appellants as authority that appellants had a right to sue in court instead of appealing to the National Railway Adjustment Board.

The holding in the Gainey case and the holding in the two recent Supreme Court cases cited in the Gainey case are not contrary to the holding in the Moore case. In the Day case, after holding that the National Railroad Adjustment Board had exclusive jurisdiction of the dispute there involved, the Supreme Court said [360 U.S. 548, 79 S.Ct. 1325]:

"Our decision in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, does not stand in the way of this. The decision in that case has been given its proper, limited scope in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. Moore carved out from the controlling doctrine of primary jurisdic-

tion the unusual and special situation of wrongful discharge where the aggrieved employee had been expelled from the employment relationship. Moreover, since the discharge had been accepted as final by the employee, it is probable that the damages accrued primarily after the employment relationship had terminated."

In the Price case, cited in the Gainey case, the Supreme Court held that Price could have sued on his claim in court, but having chosen to pursue his claim before the Adjustment Board, could not later resort to the common-law remedy after an adverse decision from the Adjustment Board. (See note No. 6 on page 1355 of the opinion).

The Day case mentions Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. We quote from the opinion in the last named case (at page 580 of the S.Ct. opinion):

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

In view of the above holdings we overrule Carrier's third counterpoint.

In its first counterpoint Carrier takes the position that the appellants' failure to file their suit within nine months after the decision against them of Carrier's highest designated officer barred any claim they might have had, in accordance with the Time-Limit-on Claims Rule of the *National Agreement of August 21, 1954.*

Appellants say that the nine months limit for the filing of suit is in conflict with the Texas Statute, Art. 5545, Vernon's Ann.Civ.St., which provides that no agreement limiting the time in which to bring suit to a shorter period than two years shall ever be valid. We might agree with appellants if this suit were a local State matter. But the field of collective bargaining, especially with reference to railroads, has been pre-empted by Congress through the Railway Labor Act. 45 U.S.C.A. § 151 et seq. In State of California v. Taylor, 353 U.S. 553, 77 S.Ct. 1037, 1042, 1 L.Ed.2d 1034, the Supreme Court of the United States quotes from its opinion in Railway Employes' Department v. Hanson, 1956, 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 as follows:

"A union agreement made pursuant to the Railway Labor Act has, therefore, the imprimatur of the federal law upon it and, by force of the Supremacy Clause of Article VI of the Constitution, could not be made illegal nor vitiated by any provision of the laws of a State."

See also Local 24 of International Brotherhood of Teamsters, etc. v. Oliver, 358 U.S. 283, 296, 79 S.Ct. 297, 305, 3 L.Ed.2d 312; Breeland v. Southern Pacific Co., 9 Cir., 231 F.2d 576 and Hooser v. Baltimore & O. R. Co., D.C., 177 F.Supp. 186. We believe that the nine months limitation provision in the *National Agreement of 1954* is valid and must control our holding here.

Appellants further say that the *National Agreement of 1954* is not applicable in this

case because it relates only to "Claims and grievances" between employer and employee. In this connection appellants point out that they are not asking for reinstatement to their positions as employees of Carrier, but are suing only for damages for wrongful discharge. They contend that their suit is a common-law cause of action only, therefore is not brought subject to the Railway Labor Act, or the *National Agreement of 1954.*

■ We see no merit in appellants' contention. As we pointed out in our discussion of Carrier's third counterpoint, cases may be cited which hold that an action for damages for wrongful discharge is not within the exclusive jurisdiction of the National Railway Adjustment Board, though the action may require the court to interpret the Railway Labor Act, or a collective bargaining agreement entered into pursuant to the Railway Labor Act. But we do not understand these cases to hold that when resort is had to court actions, such court actions are not subject to the Railway Labor Act, or to collective bargaining agreements.

In this case appellants in their petition base their alleged rights on the *Extra Board Agreement of 1950.* Appellee Carrier relies on both the *Extra Board Agreement of 1950* and the *National Agreement of 1954,* both of which are collective bargaining agreements. Actions in the courts have been held to be claims or grievances within the meaning of time-limits-on-claims provisions of agreements similar to that relied on by appellee Carrier. Breeland v. Southern Pacific Co., 9 Cir., 231 F.2d 576; Hooser v. Baltimore & O. R. Co., D.C., 177 F.Supp. 186.

Appellee Carrier's first counterpoint is sustained.

In its second counterpoint appellee Carrier asserts that as to appellant Arba Johnson, even if we were to apply our State Statutes, his cause of action, if any, would be barred by the Texas two-year statute of limitations applicable to suits based on parol contracts. It is undisputed that Johnson's employment terminated more than two years before this suit was filed.

■ In answer to Carrier's second counterpoint, appellants point out that in their amended petition they allege that their suit is based on a written employment contract. The written instrument which they allege is their employment contract is the *Extra Board Agreement of 1950.* This was a collective bargaining agreement entered into between Carrier and the Brotherhood. The individual employment contracts between appellants and Carrier were oral. It is true that these oral individual contracts between Carrier and appellants were subject to the collective bargaining agreements entered into between Carrier and the Brotherhood. But such collective bargaining agreements between Carrier and the Brotherhood are not in themselves contracts of employment between Carrier and appellants. Wilburn v. Missouri-Kansas-Texas R. Co., Tex.Civ. App., 268 S.W.2d 726. The record before us shows that appellant Johnson was not an employee of Carrier at the time the Extra Board Agreement was entered into between Carrier and the Brotherhood. He later became an employee when he entered into an individual oral contract of employment with Carrier.

■ A contract partly oral and partly in writing is a parol contract for purpose of the statutes of limitations. Cannaday v. Martin, Tex.Civ.App., 98 S.W.2d 1009. So if we consider that appellant Johnson's contract of employment includes both the individual oral contract entered into when he was employed and the earlier written Extra Board Agreement of 1950, the whole agreement must be considered an oral contract when we come to apply our statutes of limitations. That being so our two-year statute would apply to appellant Johnson even if we were to look to our state statutes as controlling in this case. Appellee's second counterpoint on appeal is sustained.

Appellants' points on appeal are over-ruled because they become immaterial as a result of our sustaining Carrier's first and second counterpoints.

The judgment of the trial court is affirmed.