275 F.2d 342
 James A. GAINEY and J. L. Young, Individually and on Behalf of Others Similarly Affected, Appellants
v.
BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES and
The Pennsylvania Railroad Company.
 No. 13047.
 United States Court of Appeals Third Circuit.
 Argued January 21, 1960.
 Decided February 24, 1960.
 Rehearing Denied March 23, 1960.
 
 Lawrence J. Richette, Philadelphia, Pa., for appellants.
 Robert M. Landis, Philadelphia, Pa. (Owen B. Rhoads, Philadelphia, Pa., Richard N. Clattenburg, Philadelphia, Pa., Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for Pennsylvania R. Co.
 Walter Biddle Saul, Philadelphia, Pa. (Gerald K. Burns, Philadelphia, Pa., Leonard D. Slutz, Robert S. Marx, Cincinnati, Ohio, Ivar H. Peterson, Cincinnati, Ohio, on the brief), for Brotherhood of Railroad and Steamship Clerks etc.
 Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from the granting of motions to dismiss the complaint, D. C.E.D.Pa.1959, 177 F.Supp. 421. The plaintiffs, purporting to represent themselves and a minimum of six hundred other employees similarly situated, sued Pennsylvania Railroad Company (Railroad) and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (Brotherhood) declaring that the action was brought under the Railway Labor Act, 45 U.S.C.A. § 151 and following. The plaintiffs seek a mandatory injunction to compel the Railroad to equalize wages paid to "tallymen" in its eastern and central regions, damages for loss of earnings, punitive damages against the Brotherhood and a return of dues collected by the Brotherhood from the plaintiffs during the period in question.
 
 
 2
 The material allegations of the complaint may be summarized as follows: Plaintiffs are "tallymen" employed by the Railroad in its eastern region and are members of the Brotherhood; as such, they are covered by a collective bargaining agreement entered into between the Railroad and the Brotherhood on May 1, 1942. At all relevant times, they say, eastern region "tallymen" were paid approximately $25 per month less than their central region counterparts. This geographic differential in pay was the subject of a dispute. It is claimed that an "agreement" (reduced to writing in a letter attached to the complaint) was entered into in 1950 removing the differential. The letter also provided for the elimination of certain tonnage rates (the exact nature of which is not made clear by the complaint) in the eastern region. Despite this "agreement," it is alleged, the pay rates were never equalized, although tonnage payments to the eastern region "tallymen" were eliminated. The Brotherhood, it is charged, has never taken any steps to compel the Railroad to abide by its new "agreement" because "the Pennsylvania Railroad Company could control union officers at will." Accordingly, plaintiffs bring this action.
 
 
 3
 A seemingly insurmountable defense of the Railroad to this suit is Section 3, First (i) of the Railway Labor Act, 45 U.S.C.A. § 153, First (i). This section provides for the referring of unresolved disputes "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," to the appropriate division of the National Railroad Adjustment Board. Beginning with Slocum v. Delaware, L. & W. R. R., 1950, 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795 and Order of Ry. Conductors v. Southern Ry., 1950, 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, the Supreme Court has held that primary jurisdiction in such cases as these lies in the Board and not in the courts, state or federal. See Pennsylvania R. R. Co. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 and Union Pac. R. R. Co. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L. Ed.2d 1460, for the most recent reiterations and applications of this rule. The plaintiffs, themselves, acknowledge that "disputes between carriers and their employees as to interpretation of existing agreements must be referred to the National Railroad Adjustment Board." Plaintiffs argue that this litigation does not involve an interpretation of an existing agreement. In spite of the many words used in arguing this point, we think it has no merit. If plaintiffs have any claim at all against the Railroad it must be because of existing "agreements" between the Brotherhood and the Railroad; the allegation that the Brotherhood has permitted the Railroad to ignore the "agreements" does not remove this case from the Board's jurisdiction. This point alone would be sufficient to require dismissal of the complaint against the Railroad.
 
 
 4
 There is an additional reason why plaintiffs' basic claim against the Railroad must fall. That cause of action is based solely on a contract. According to the complaint,[1] that contract is embodied in a letter written by the General Chairman of the Brotherhood's Pennsylvania Railroad System Board of Adjustments to W. L. Nancarrow, General Manager of the Railroad's eastern region, under date of April 21, 1950. This letter is attached to the complaint and its authenticity is not denied by the defendants. The letter must be quoted in full because this is the peg upon which the plaintiffs hang their case. It says:
 
 
 5
 "Dear Sir:
 
 
 6
 "This refers to your letter of April 7, 1950 which is in connection with our letter of January 21, 1949 filing formal notice in accordance with the procedures of the Railway Labor Act and our initial meeting held on February 15, 1949 with respect to our desire to abrogate the agreement of July 29, 1941 with respect to tonnage rates of pay applicable to certain positions at Philadelphia Transfer, Philadelphia Terminal Division, and to substitute in lieu thereof a new agreement to be effective as of March 1, 1949.
 
 
 7
 "We quote from your letter:
 
 
 8
 "`We have given very careful consideration to your proposal in this matter; and, in view of the pronounced decrease in the total amount of tonnage handled, and because of the changed present day conditions, at the Philadelphia Transfer, we are of the opinion that it would be of mutual benefit to both Management and the Employees if the tonnage rates were eliminated entirely at this location.'
 
 
 9
 "In accordance with our discussion at our meeting in Philadelphia, Pennsylvania on April 18, 1950 we are agreeable to your suggestion. This is based on our understanding that the rate of pay for tallymen in the Eastern Region will be changed to the same rate of pay that is in effect in the Central Region, that is $269.17 a month, and further, that the same considerations attendant to such monthly rated employees in the Central Region will be granted these employees. We suggest that this entire arrangement be made effective as of May 1, 1950.
 
 
 10
 "Will you please advise if you concur.
 "Yours truly,
 "s/S. V. W. Loehr
 "General Chairman"
 
 
 11
 We think no amount of discovery, deposition or other procedural device can make this letter into a contract. The district judge described it as "a mere offer or, possibly, a counter offer," 177 F. Supp. at page 428. We are sure it is no more than that and would be inclined to say it is simply an invitation for further comment from the Railroad official to whom it is addressed. It is perfectly clear that an interpretation of a writing is for the court. An examination of this writing reveals plainly that it is not an acceptance under general principles of contract law[2] or under the decisions of Pennsylvania courts[3] in which state this letter was composed, mailed and received. We reiterate that no amount of discovery can turn a letter which on its face is not a contract into one.
 
 
 12
 If the plaintiffs claim that the provisions of the earlier agreement have not been lived up to, they may make their claims to the Railroad Adjustment Board, assuming that the claims would still be timely. Individual claimants may present such claims to the board.[4]
 
 
 13
 Whether or not plaintiffs' allegations against the Brotherhood are sufficient to state a cause of action under the Railway Labor Act and the line of cases stemming from Steele v. Louisville & N. R. R., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, we need not decide here. The reason is that the plaintiffs have failed to allege exhaustion of their remedies within the union or an adequate reason for failure to do so. They say that their complaint "has gone unheeded by all echelons of the Brotherhood since 1951," but nowhere is there an allegation that they have attempted to pursue remedies available to them within the Brotherhood's internal structure. Recent Pennsylvania decisions[5] show us that this Brotherhood does indeed provide internal remedies which appear adequate. In a case such as this, exhaustion of internal union remedies (absent an adequate reason for failure to do so) is a prerequisite to suit. Both Pennsylvania[6] and Federal[7] authorities support this conclusion.
 
 
 14
 Without going into all the other bases of defense brought before both the district court and this Court, we think it abundantly clear that the judgment of the district court was correct and the decision will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Paragraph VIII of the complaint reads as follows:
 "This arbitrary differential, based on geography alone, was the subject of a dispute between the plaintiffs and the defendant railroad company and finally, S. V. W. Loehr, General Chairman of the Pennsylvania Railroad System Board of Adjustment of the defendant Brotherhood proceeded to negotiate a settlement of the dispute — in accordance with the grievance processing machinery of the Railway Labor Act — and on August 1, 1951 an agreement was consummated by Mr. Loehr on behalf of the plaintiffs and Mr. Stewart, Superintendent of Stations & Transfer on behalf of the Pennsylvania Railroad Company. In substance the defendant railroad company agreed to pay "tallymen" on the Eastern Region the same monthly rate of pay then prevailing on the Central Region. Fringe benefits were likewise equalized between the two regions. This understanding between the Brotherhood and the carrier was reduced to writing as was the custom in like matters by a letter from Mr. Loehr to the Pennsylvania Railroad Company confirming the change in rate of pay. This letter is attached hereto and marked Exhibit `A.'"
 
 
 [2]
 See Restatement, Contracts §§ 2, 19, 20, 22, 24, 60 (1932)
 
 
 [3]
 Cohn v. Penn Beverage Co., 1934, 313 Pa. 349, 169 A. 768; Selig v. Philadelphia Title Ins. Co., 1955, 380 Pa. 264, 111 A. 2d 147; United Mercantile Agencies, Inc. v. Slotsky, 1936, 121 Pa.Super. 1, 182 A. 788; Alexanian v. Fidelity-Philadelphia Trust Co., 1943, 152 Pa.Super. 23, 30 A.2d 651
 
 
 [4]
 See the plain language of 45 U.S.C.A. § 153, First (i) ("disputes between an employee or group of employees and a carrier") and (j) ("Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect * * *."). See also Conley v. Gibson, 1957, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 and Colbert v. Brotherhood of R.R. Trainmen, 9 Cir., 1953, 206 F.2d 9, 12, certiorari denied 1954, 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422. Cf. Steele v. Louisville & N. R. R., 1944, 323 U.S. 192, 205-206, 65 S.Ct. 226
 
 
 [5]
 Grand Lodge v. Girard Lodge No. 100, 384 Pa. 248, 120 A.2d 523, certiorari denied 1956, 351 U.S. 985, 76 S.Ct. 1052, 100 L.Ed. 1498; McGovern v. Brotherhood of Ry. and Steamship Clerks, September Term 1956, No. 3908 in Equity, Ct. Common Pleas No. 2, Philadelphia County, May 23, 1957. See also Fagan v. Pennsylvania R.R. Co., D.C.M.D.Pa. 1959, 173 F.Supp. 465, 474
 
 
 [6]
 In a recent case, Fagan v. Pennsylvania R.R. Co., D.C.M.D.Pa. 1959, 173 F.Supp. 465, 473-474, Judge Follmer gives this trenchant statement of the legal proposition: "The law in Pennsylvania is well established that members of a labor organization may not seek relief in the courts against their union until they have exhausted all remedies available to them within the union to satisfy their grievances." The statement of the learned judge is fully borne out by the Pennsylvania decisions. See Durso v. Philadelphia Musical Soc., Local No. 77, 1957, 11 Pa.Dist. & Co.R.2d 463, 467, affirmed per curiam 1958, 392 Pa. 30, 139 A.2d 555, 557-558; Binkowski v. Highway Truck Drivers and Helpers, Local 107, 8 Pa.Dist. & Co.R.2d 254, 255, affirmed per curiam 1957, 389 Pa. 116, 132 A.2d 281, 283; Grand Lodge v. Girard Lodge No. 100, 384 Pa. 248, 262, 120 A.2d 523, 530, certiorari denied 1956, 351 U.S. 985, 76 S.Ct. 1052, 100 L.Ed. 1498
 
 
 [7]
 See Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 1944, 323 U.S. 210, 213-214, 65 S.Ct. 235, 89 L.Ed. 187