**Ralph A. WADE, Walter B. Kyle, Willie F. Garmon, Individually for themselves and for others similarly situated, Plaintiffs,**

**v.**

**SOUTHERN PACIFIC COMPANY, Switchmen's Union of North America, and H. P. Watson, Defendants.**

**Civ. A. No. 65–H–212.**

United States District Court
S. D. Texas,
Houston Division.

July 8, 1965.

Schmidt & Garrett, Houston, Tex. (George L. Schmidt), Houston, Tex., for plaintiffs.

Baker, Jordan, Shaw & Foreman (Jim Foreman), Dallas Tex., and Combs & Mitchell, (W. Arthur Combs), Houston, Tex., for defendants Switchmen's Union of North America and H. P. Watson.

Baker, Botts, Shepherd, & Coates (V. R. Burch, Jr.), Houston, Tex., for defendant Southern Pacific Co.

NOEL, District Judge.

This case is presently before the Court upon the motions of the defendants Southern Pacific Company, Switchmen's Union of North America and H. P. Watson to dismiss for the following reasons: (1) the plaintiffs have failed to exhaust their administrative or contractual remedies for the redress of any grievance which they may have; (2) jurisdiction of the matter complained of in the plaintiffs' complaint is vested in the National Railroad Adjustment Board; (3) the complaint does not state a claim upon which relief can be granted because it is based on the speculative possibility of future hypothetical events affecting seniority rights and does not involve a case of actual controversy; (4) there is an adequate remedy at law under the provisions of the Norris-LaGuardia Act, 29 U. S.C.A. §§ 101–115, and the Court has no jurisdiction of the subject matter of the plaintiffs' complaint because it constitutes a case involving a growing out of a labor dispute; (5) there is no showing of irreparable harm; (6) there is no complete diversity of citizenship between all the plaintiffs and defendants, and the matter was not one involving federal-question jurisdiction.

Pertinent facts in the case are as follows. The plaintiffs, employees of the defendant Southern Pacific Company, for many years prior to February 3, 1965 were represented by the Brotherhood of Railroad Trainmen as the designated bargaining agent of the class of yardmen or switchmen. During such time the Brotherhood and the Southern Pacific Company made agreements under the provisions of the Railway Labor Act. One such agreement provided for the loss of seniority status of employees who did not protect their position by reporting for work upon the expiration of leaves of absence.

Defendant H. P. Watson, a then employee of Southern Pacific Company (the

Texas & New Orleans Railroad Company), on June 19, 1959 requested of the railroad a year's leave of absence because he was then a vice-president of the defendant Switchmen's Union of North America. This request was granted by the railroad, which also advised Watson that his leave of absence would expire on June 18, 1960. Watson did not return to his employment for the railroad on June 18, 1960. The railroad removed his name from the seniority roster effective June 29, 1960. At that time, defendant H. P. Watson's seniority dated from May 1, 1946, and his name appeared as No. 214 on the railroad's seniority list of yardmen or switchmen.

On December 29, 1964, the defendant Switchmen's Union of North America was certified as the bargaining agent representing the defendant Southern Pacific Company's employees of the class of yardmen or switchmen. On February 3, 1965, the defendant H. P. Watson was reemployed with the railroad and marked up with full seniority reestablished and given No. 165½ on the railroad's seniority roster. It is the plaintiffs' contention that Watson's seniority was forfeited by failure to comply with the leave-of-absence rule and that the reemployment with Southern Pacific Company entitled him to be placed on the bottom of the seniority list with the number of 368 or greater.

Plaintiffs further contend that the action of defendants in placing or causing to be placed the name of H. P. Watson on the defendant railroad's seniority list of yardmen as No. 165½ with full seniority rights reestablished has deprived the plaintiffs and 200 other employees of the same class of their established seniority rights, and has deprived them of a valuable property right, to their irreparable harm and damage. The plaintiffs are not members of the Switchmen's Union of North America.

The plaintiffs assert that the defendants Southern Pacific Company and Switchmen's Union of North America conspired together to deprive the plaintiffs and all other employees similarly situated of their valuable seniority rights in violation of their rights under the contract heretofore made, the Railway Labor Act and the laws of the land. Plaintiffs further assert that the defendants previously mentioned have, in violation of the Railway Labor Act, discriminated against the plaintiffs and all other employees similarly situated, because plaintiffs and many others of the defendant railroad's employees are not members of the Switchmen's Union of North America, and by so doing have intimidated, coerced and influenced the plaintiffs and all other employees similarly situated to cease remaining members of the labor organization of their choice and to become members of the defendant Switchmen's Union of North America.

The plaintiffs pray that an injunction issue enjoining the Southern Pacific Company and Switchmen's Union of North America from continuing to maintain H. P. Watson's name in its present position on the seniority list and requiring the defendant Southern Pacific Company to remove Watson's name from its present position and to place his name on the seniority list with seniority as of February 3, 1965. They also pray that this Court declare that defendant H. P. Watson is not entitled to have his seniority reestablished as of May 1, 1946 but is entitled only to have it established as of February 3, 1965, that each of the employees of the Southern Pacific Company of the class of yardmen are entitled to have their seniority rights unimpaired and superior to that of H. P. Watson, that any attempted restoration by Southern Pacific Company of Watson's seniority other than that as of February 3, 1965 is invalid, and that costs of court, attorneys' fees and such other relief be awarded.

██ Forty-five U.S.C.A. § 153, first [i] of the Railway Labor Act, provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or

**310**

working conditions, * * * may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."

The plain meaning of this Section is that the Railroad Adjustment Board is charged with responsibility of adjudicating controversies between employees and their employer, the carrier, and not those involving employees and their bargaining representative. Furthermore, the Adjustment Board does not have exclusive or even concurrent jurisdiction over suits by an employee against the bargaining agent to redress discriminatory treatment. Rumbaugh v. Winifrede R. Co., 331 F.2d 530 (2d Cir. 1964). Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4th Cir. 1963). Therefore, since this suit involves a suit in part, at least, by employees against their union, this part of the suit would not be within the jurisdiction of the Railroad Adjustment Board.

 This case should not be dismissed for want of diversity jurisdiction, because it involves a federal question. Under the Railway Labor Act and the National Labor Relations Act, 29 U.S.C. A. § 151 et seq., a bargaining agent must fairly and without discrimination represent all employees in the bargaining unit, and employees discriminatorily treated have recourse to federal courts. Thus, there is a federal cause of action which is judicially enforceable involving the duty of fair representation, and this duty is not limited to racial discrimination cases. Therefore, at least in reference to the suit against the Union, there is a federal question involved and exclusive jurisdiction is not in the Railroad Adjustment Board if this suit involves discriminatory, unfair representation by the Union, rather than merely a controversy over the interpretation of a collective bargaining agreement. See Thompson v. Brotherhood of Sleeping Car Porters, supra; Rumbaugh v. Winifrede R. Co., supra; Hiller v. Liquor Salesmen Union Local No. 2, 338 F.2d 778 (2d Cir. 1964).

In some instances relief in the courts has been denied because charges of discrimination have either not been made or have clearly been unwarranted. See such cases as Hostetler v. Brotherhood of Railroad Trainmen, 287 F.2d 457, cert. den. 368 U.S. 955, 82 S.Ct. 397, 7 L.Ed.2d 387; Britton v. Atlantic Coast R. Co., 303 F.2d 274 (5th Cir. 1962); Colbert v. Brotherhood of Railroad Trainmen, 206 F.2d 9 (9th Cir. 1953). This is not such a case, but is one where a good-faith allegation of discrimination is made, and in such a situation specific facts in support of the general allegations need not be set forth and a court may not dismiss the suit for want of jurisdiction. Haley v. Childers, 314 F.2d 610 (8th Cir. 1963); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This is a case in which the plaintiffs in their complaint allege in essence that the union and the employer violated an existing seniority agreement in order to advance in seniority a high official of the union bargaining agent, which official was partially responsible for enabling the union to become the bargaining agent of the employees. A similar type situation was held to be within the jurisdiction of the court and to allege a federal cause of action in Thompson v. Brotherhood of Sleeping Car Porters, supra. That case is similar to the instant case in that there a union was alleged to have breached the duty of fair representation in that it did not help plaintiff obtain the seniority rights to which he was allegedly entitled under the existing agreement with the railroad. Here, many persons are allegedly denied their seniority rights under an existing agreement because of the action of the bargaining agent in allegedly not following the agreement and in placing a high-ranking union official above other parties in seniority.

Thus, insofar as the suit by the plaintiff-employees against the union is concerned, it asserts a federal cause of action, and jurisdiction for it is proper in the courts rather than in the Railroad Adjustment Board. However, a cause of action is also asserted against the rail-

road, the employer-carrier. Under the Railway Labor Act, it would at first blush appear that this would be a suit or dispute under a collective bargaining agreement between the employee and employer which should go to the Railroad Adjustment Board. Such a position and such action did occur in Haley v. Childers, supra, and Gainey v. Brotherhood of Railway and Steamship Clerks, 275 F.2d 342 (3d Cir. 1960), and same case in 313 F.2d 318 (3d Cir. 1963). However, in the Haley case the Court distinguished its situation from that of Cunningham v. Erie R.R., 266 F.2d 411 (2d Cir. 1959), by saying that, "Unlike the Cunningham case, supra, * * * this case is not one in which the carrier must remain in the case in order to give complete relief." And it further states that, "Inasmuch as the complaint does not allege discrimination on the part of Terminal [footnote omitted], and since Terminal is not a necessary party in suit against Childers and Switchmen for discriminatory practices, Conley v. Gibson, supra, * * * we hold that the claim of discrimination against these defendants is insufficient to also vest court jurisdiction over Terminal." In the instant case, however, there is an allegation of discrimination on the part of the carrier. The principles of Cunningham are apposite here; the railroad must stay in in order to give complete relief.

In such United States Supreme Court cases as Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949), the railroad was included as a party without discussion. In Conley v. Gibson, supra, the presence of the railroad was deemed not indispensable, but it was recognized that the railroad might be brought in at a later time. Moreover, the Fifth Circuit in Britton v. Atlantic Coast R.R., supra, stated in a suit by plaintiffs against both the railroad and the union that if the complaint properly set forth the theory of discriminatory, unfair representation then jurisdiction was properly in the courts rather than in the Railroad Adjustment Board, and no distinction was made between the union and the railroad. Furthermore, as stated in Cunningham, supra, and restated in Rumbaugh, supra,

"If the District Court has jurisdiction to proceed against the union it is clear, we think, that it has also power to adjudicate the claim against the railroad. It would be absurd to require this closely integrated dispute to be cut up into segments."

Finally, that the railroad as well as the union is a proper party in a suit for hostile discrimination amounting to a breach of a statutory duty to provide fair representation is clear from Richardson v. Texas & New Orleans R.R., 242 F.2d 230 (5th Cir. 1957).

Therefore, this Court would have jurisdiction rather than the Railroad Adjustment Board of the case against both the union and the railroad because of the allegation of hostile discrimination resulting in unfair representation; furthermore, federal-question jurisdiction exists.

Under the collective bargaining agreement in existence between the employees and the employer in this case, there are provisions for the presentation of grievances, claims or disputes with respect to interpretation and application of the collective bargaining agreement. Plaintiffs have made no effort whatsoever to present a grievance through these procedures; however, they contend that there need be no processing of a grievance against the employer under the provisions of the bargaining agreement covering the employees since there is also discrimination by the union against the employees it represents. They assert that no argument is needed to show the inappropriateness of requesting an aggrieved employee to ask the discriminating agent to present a claim to the carrier because of the bargaining agent's discrimination

in which the carrier concurs. Plaintiffs' contention is not correct as is evident from the recent Supreme Court case of Republic Steel Corp. v. Maddox, 379 U. S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 [1964] requiring the exhaustion of contractual grievance procedures before suit is brought in court. The case although under the Labor-Management Relations Act is just as applicable to situations under the Railway Labor Act. The Court states:

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. * * * But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. * * * Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees and it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so."

Thus, by requiring exhaustion of the internal grievance procedures, the specter raised by the defendant railroad that employees would always allege hostile discrimination on the part of the union in every contract interpretation suit under the Railway Labor Act is dissipated, for by requiring the union to process the grievance prior to court action one can get a fairly good idea of the position of the union.

While it is true that Richardson v. Texas & New Orleans R. R., supra, holds that internal grievance procedures do not have to be exhausted to the point of requiring the plaintiffs individually to seek and be denied relief through presentation of their grievance to their carrier-employer, this case does not state and in fact seems to imply that employees shall give the union the opportunity to process their grievances. Of course, this is all that the Supreme Court case of Maddox requires. The allegation of hostile discrimination amounting to a denial of fair representation becomes more plausible once an employee requests his union to pursue the grievance procedures established in order to protect his seniority rights, and the union fails to do so.

Although the individual employee does not himself have to process grievances against the employer if the union fails to do so, he must then exhaust any internal *union remedies* which may exist or allege an adequate reason for failure to do so. Gainey v. Brotherhood of Railway & Steamship Clerks, supra, and Gainey v. Brotherhood of Railway & Steamship Clerks, 313 F.2d 318 (3d Cir. 1963). However, an employee is not required, as a prerequisite to bringing suit, to follow any arbitration clause that may be in the collective bargaining agreement. Hiller v. Liquor Salesmen's Union Local No. 2, supra. In other words, although he must request that the union exhaust the grievance procedures available and if it refuses to do so he must use any internal union grievance procedure that is available, it is not required that his suit be submitted to arbitration, even if that is a portion of the grievance procedure. That an employee must afford the union the opportunity to act on his behalf, even in situations where he alleges discrimination on the part of the union, as a prerequisite to court suit is evident from the dissenting opinion of Mr. Justice Black in Republic Steel v. Maddox, supra. See 379 U.S. 650, pp. 668–669, 85 S.Ct. 614, 13 L.Ed.2d 580.

Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed. 370 (1963), concurring opinion of Mr. Justice Goldberg at p. 356, indicates not only that an in-

junction will lie in this type of suit, but also that the employer, the railroad, was a proper party in the suit. Other cases which by implication show that an injunction may lie in this type of suit are: Richardson v. Texas & New Orleans R. R., 242 F.2d 230 (5th Cir. 1957); Haley v. Childers, 314 F.2d 610 (8th Cir. 1963).

Therefore, upon the submission by the defendants of evidence that (1) contract grievance procedures existed which the plaintiffs did not request the union to pursue on their behalf, and/or (2) that internal union grievance procedures existed and although the union was requested to process the employee's grievance, which it failed to do, the employee did not pursue a complaint for failure to do so against the union through its internal grievance procedure, the Court will act upon defendants' motion to dismiss.

Clerk will file this memorandum and order and send a copy each to respective counsel.