Ruth C. CHAPMAN, Plaintiff,

v.

SOUTHEAST REGION I. L. G. W. U. HEALTH AND WELFARE RECREATION FUND et al., Defendants.

Betty J. PETTY, Plaintiff,

v.

SOUTHEAST REGION I. L. G. W. U. HEALTH AND WELFARE RECREATION FUND et al., Defendants.

Hazel S. MURRAY, Plaintiff,

v.

JONATHAN LOGAN, INC., et al., Defendants.

Evelyn V. HYATT, Plaintiff,

v.

JONATHAN LOGAN, INC., et al., Defendants.

Civ. A. Nos. 66-791—66-794.

United States District Court
D. South Carolina,
Spartanburg Division.

March 2, 1968.

Thomas A. Evins, Means, Evins, Browne & Hamilton, Thomas C. Bradley, Jr., Erwin & Bradley, Spartanburg, S. C., for plaintiffs.

E. W. Mullins, Nelson, Mullins, Grier & Scarborough, Columbia, S. C., for defendants International Ladies' Garment Workers' Union and International Ladies' Garment Workers' Union, Local 581.

J. Bratton Davis, Graydon & Davis, Columbia, S. C., for defendants Jonathan Logan, Inc. & Spartan Undies, Inc.

E. N. Zeigler, McEachin, Townsend & Zeigler, Florence, S. C., for defendant

Southeast Region I.L.G.W.U. Health & Welfare Recreation Fund.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

All four of these actions have been filed by nonunion employees of the defendant Spartan Undies, Inc. to recover vacation pay allegedly due them for the year ending December 31, 1965, and illegally withheld in contravention of the South Carolina Right-to-Work Law (Section 40–46, Code of Laws of South Carolina, 1962). In two of the actions (i. e., those filed by the plaintiffs Hazel S. Murray and Evelyn V. Hyatt) the defendants are Jonathan Logan, Inc. and its wholly owned subsidiary Spartan Undies, Inc. In the other actions, the defendants are Jonathan Logan, Inc., Spartan Undies, Inc., both the National Union and its Local, and the Health and Welfare Recreation Fund created under the collective bargaining agreement between the union and the employers.

In an earlier Order, this Court sustained federal jurisdiction herein under Section 301(a) of the Labor Management Relations Act. Chapman v. Southeast Region I.L.G.W.U. Health & Welfare Recreation Fund (D.C.S.C.1967) 265 F.Supp. 675.

The matter is now before me on the motion of the defendants either to dismiss or to stay the actions pending arbitration.

While the defendants are not identical in all actions, the legal issues and the pertinent allegations in the four cases are identical. I shall accordingly consider and dispose of the motions together in this Order.

The complaints, so far as relevant to the present motions, allege that the plaintiffs were originally employed by Spartan Undies. Inc., which at the time was an independent, non-union business. As such employees, they received vacation pay, calculated annually at the end of the calendar year on the basis of two (2%) per cent. of their annual wages and payable on June 1 thereafter.[1] In 1964, Spartan Undies, Inc. was acquired by Jonathan Logan, Inc., and was thereafter operated, as a wholly owned subsidiary of the latter. Jonathan Logan had a collective bargaining agreement with the defendant union, covering the employment rights of its employees, and this agreement embraced the employees of Spartan Undies, Inc., after the acquisition of the latter by Jonathan Logan. By the terms of this bargaining agreement, vacation pay of the plaintiffs was provided, to be paid through the Health and Welfare Recreation Fund of the defendant union on behalf of the employer. Pursuant to this provision, the plaintiffs were duly paid their vacation pay, calculated as formerly, for the calendar year 1964, in June, 1965. Prior to payment date for their vacation pay for the year 1965, however, a notice was posted on the employer's bulletin board that plaintiff and other non-union employees should apply "to one Joe Ferguson" as agent for the Fund and the union "for checks to cover wages due to her (them) as vacation pay". When the plaintiffs applied to Joe Ferguson for payment of their vacation pay, they received checks from which certain sums had been deducted as "a service charge applicable to non-union members only". In fact, in one case, it was alleged that the service charge made against the employee-plaintiff absorbed all her vacation pay and left her owing a balance to the Fund. Such deductions, which the plaintiffs state they never authorized, violated the terms of the South Carolina Right-to-Work Law. They seek judgment for the amount of such deductions and for punitive damages on account of such withholding under Section 40–46.8, Code of Laws of South Carolina (1962).

The complaints, which have just been summarized, did not include by way of

1. That such vacation pay represents an integral part of an employee's wages, see Chester v. Jones (Tex.Civ.App.1965) 386 S.W.2d 544, 549; Lim v. Motor Supply Ltd. (1961) 45 Haw. 111, 364 P.2d 38, 91 A.L.R.2d 1067.

exhibit the applicable contract between the employer and the union, under which vacation pay for the plaintiffs, it was claimed, was provided. By stipulation, however, this contract, with its supplement, was incorporated in the record, and, upon hearing of these motions, both parties based their contentions, in whole or in part, on such agreement. Thus, the plaintiffs point to the agreement in support of their right to vacation pay. The defendants, on the other hand, rely on the arbitration provisions of the contract for their motion to stay proceedings herein pending arbitration.

The collective bargaining agreement consists of two parts. The first, described as the master contract, applied to all the plants operated by the defendant Jonathan Logan, whether directly or through a subsidiary. Such master contract contemplated and authorized "supplemental contracts", covering special terms applicable to a specific plant's employees. There was such a supplemental contract covering the employees at the plant where the plaintiffs were employed.

The plaintiffs rely (1) on Section 1, Article XIV of the master contract, which states that, "Provision for vacation shall be as set forth in the plant supplemental agreements" and (2) on Section 8 of the supplemental agreement applicable to employees at the Spartan Undies plant, which declares that, "To provide for vacation benefits to workers, the Employer shall pay weekly to the Southeastern Regional I.L.G.W.U. Health and Welfare Fund a like amount to two(2%) per cent of the same payroll".

The defendants, on the other hand, plant their motion on Article XL of the master contract, which provides that "all disputes, complaints, controversies, claims or grievances * * * which directly or indirectly arise under, out of, or in connection with" such agreement, "including the arbitrability of any dispute", shall be settled exclusively and finally by arbitration. The right to invoke and "process" any claim or dispute on behalf of any employee in such arbitration was vested solely in the union,

and the individual employee was denied any right to invoke or "process" arbitration.

The defendants contend that, in seeking vacation pay under the terms of the collective bargaining agreement, the plaintiffs are bound by the exclusive arbitration procedures provided under such contract for the enforcement of rights thereunder and that the power of the Court in these actions is accordingly limited to directing arbitration in the manner provided by the master contract. This contention presents the issue before the Court.

■ Ordinarily, when an employee's claim derives from a collective bargaining agreement—as do the claims of the plaintiffs for vacation pay—he is, as the defendants argue, bound by the terms of the agreement establishing the procedure for the redress of such claim. If such agreements provide specifically for exclusive arbitration procedures in the settlement of claims thereunder, the Courts favor such procedures and require an attempt to use or invoke such procedures before application for judicial relief. Vaca v. Sipes (1967) 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842; Republic Steel Co. v. Maddox (1965) 379 U.S.C. 650, 652–653, 85 S.Ct. 614, 13 L.Ed.2d 580; Local Union No. 24, International Brotherhood of Electrical Workers v. Hearst Corp. (C.C.A. 4, 1965) 352 F.2d 957, 958–959, cert. denied 383 U.S. 937, 86 S.Ct. 1067, 15 L.Ed.2d 853; United Textile Workers v. Newberry Mills, Inc. (C.C.A. 4, 1963) 315 F.2d 217, 219, cert. denied 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 53. But this is not an inflexible rule to be applied with mechanical rigidity. In the two leading cases, in which the general rule is authoritatively enunciated and upon which the defendants rely, the Supreme Court recognized that under certain circumstances exceptions to the rule were proper. Thus, in the *Maddox* case, supra, the Court, after stating the general rule, said that, "Once it is established that the federal rule discussed above applied to grievances in general, it should next be inquired

whether the specific type of grievance here in question—one relating to severance pay—is so different in kind as to justify an exception." (379 U.S. at p. 654, 85 S.Ct. at p. 617). Implicit in that statement is the concept of exceptions to the general rule.[2] Later, in Vaca v. Sipes, supra, the Court, after restating the general rule set forth in the *Maddox* case, proceeded to define the circumstances under which an employee "may (might) bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies." (386 U.S. at p. 186, 87 S.Ct. at p. 914).

The sound reason for such exceptions to the general rule was indicated by Mr. Justice White in the *Vaca* case, supra, in his comment that "because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." (386 U.S. at p. 185, 87 S.Ct. at p. 914).

Do the facts in these cases pose a situation "so different in kind as to justify an exception" to the rule commanding prior resort to contractual arbitration procedures? According to the allegations of plaintiffs' complaints—and for purposes of this motion, they must be assumed to be true—the defendants participated in a plan whereby a "service charge" was collected on behalf of the Union's Health and Recreation Fund out of earnings due the plaintiffs, though no similar charge was made against union members. The earnings against which such charge was made were accrued claims. Cf. Elgin, J. & E. R. Co. v. Burley (1945) 325 U.S. 711, 739–740, 65 S.Ct. 1282, 89 L.Ed. 1886. This charge against accrued earnings, it is urged, represented an impermissible discrimination against plaintiffs, violative of their rights under the South Carolina Right-to-Work Law. In argument, the plaintiffs seek to bulwark the claim of illegality against such charge by pointing to Article IV of the master agreement as evidence of an intent on the part of the defendants to exact under any possible device or nomenclature a "service charge" for the benefit of the union from all non-union employees of the employer such as the plaintiffs. They contend that this deduction by way of a "service charge" from their vacation pay for the benefit of the union's "affiliate"[3] was intended to accomplish such purpose and fell clearly within the proscription of the South Carolina statute. It might be remarked that this argument goes beyond the scope of the allegations of the complaints but the collective bargaining agreement, incorporated by agreement in the record, does afford some possible basis for this contention. The real claim herein is accordingly against the union itself for what the plaintiffs charge was an unlawful deduction made for the advantage of the union or its affiliate. If wrong has been done the plaintiffs, the active wrongdoer is the union, aided by the employer. If the plaintiffs have any cause of action, it rests on the claim that the union has sought illegally and purposefully to deprive them of their rights under the South Carolina law for the financial benefit of the union and

2. See, Fiore v. Associated Transport, Inc. (D.C.Pa.1966) 255 F.Supp. 596: "In Republic Steel Corp. v. Maddox, 1965, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, the court recognized that as a general rule individual employees wishing to assert contract grievances must use the grievance procedure agreed upon by employer and union. The court also recognized that there may be situations which justify an exception."
See, also, Henderson v. Eastern Gas and Fuel Associates (C.C.A.4, 1961) 290 F.2d 677, 681, note 5.

3. The master contract refers to the Fund as an "affiliate" or "depository".

its Health and Recreation Fund.[4] It is that claim which the defendants assert must be submitted to the arbitration procedures established by the collective bargaining agreement.

The arbitration provisions of this collective bargaining agreement, which the defendants contend control on this motion, vest in the union alone the right to initiate or participate in the arbitration of any claim of an employee thereunder. It thus clothes the union with the exclusive control over the presentation of any claims of an employee. It and the employer have created the tribunal to adjudicate such claim. The union and the employer have named the arbitrator, who is to pass on the dispute, and whose conclusions of fact and law, whether erroneous or not, are final and conclusive.[5] To put it bluntly: In this arbitration proceeding, to which the defendants contend the plaintiffs are unequivocally bound, the plaintiffs' adversaries —for that is the character of the union and the employer in this situation—have absolute control over the presentation of plaintiffs' complaint against themselves and, in addition, they—without any right of participation whatsoever on the part of the plaintiffs—select the judge and jury to determine finally and conclusively the rights of the plaintiffs in connection with that complaint against themselves. The situation is strikingly analogous to that in the case of Hiller v. Liquor Salesmen's Union Local No. 2 (C.C.A. 2, 1964) 338 F.2d 778, where the Court remarked that the arbitration procedure "would entrust representation of the employee to the very union which he claims refused him fair representation, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him." (P. 779)

It must be recognized that this is not a typical claim of an employee against his employer under a collective bargaining agreement, in connection with which the general rule sustaining arbitration has been applied. In the typical case, the union has no conflict of interest with the claim by the employee; in most cases its interests favor the employee. Of course, as the Court observed in Humphrey v. Moore (1964) 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, reh. den. 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655, unions, exercising their prerogative of exclusive bargaining agent, sometimes are forced to favor one employee or group of employees over another in an arbitration under the collective bargaining agreement; and in the normal situa-

---

4. It is somewhat unfortunate that this motion has been made when the relevant facts had not been developed under discovery proceedings. The exact operation of the Health and Recreation Fund is not of record. The master contract speaks of it as "an affiliate" of the union, though apparently the union and the employer have equal representation on its Board of Trustees.

5. In Textile Workers Union of America v. American Thread Co. (C.C.A.4, 1961) 291 F.2d 894, 896, the Court stated the rule: "Even in earlier days when courts were less hospitable to arbitration, it was decided that they would not set aside an arbitrator's award for mere errors of fact or law; and mistakes in the admission of evidence or misinterpretation of the contract giving rise to the arbitration would not vitiate the award." Again, in United Fuel Gas Co. v. Columbian Fuel Corporation (C.C.A.4, 1948) 165 F.2d 746, 751: "We cannot say that the arbitrators misinterpreted the contract * * *; but, had they done so, this would not vitiate the award." It has been suggested that the dictum in Mr. Justice Reed's opinion in Wilko v. Swan (1953) 346 U.S. 427, 436–437, 74 S.Ct. 182, 187, 98 L.Ed. 168, that "the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation" (italics added) modified somewhat the rule originally enunciated in Burchell v. Marsh et al. (1854) 17 How. 344, 349, 15 L.Ed. 96, that arbitrator's awards may not be set aside "for error, either in law or fact". For the effect to be given Justice Reed's dictum, see particularly San Martine Compania De Nav. v. Saguenay Terminals Ltd. (C.C.A.9, 1961) 293 F.2d 796, 800–801 and Saxis Steamship Co. v. Multifacs International Traders, Inc. (C.C.A. 2, 1967) 375 F.2d 577, 582.

tion such favoring does not disqualify the union in the exercise of its right to exclusive representation in the arbitration. *But in such cases the union does not have a personal interest of its own, hostile and adverse to that of the employee or group of employees it claims to represent.* Here, on the contrary, the union has an interest in this controversy personal to itself and directly contrary to the rights claimed by the plaintiffs. Actually, the controversy in these cases is basically between the union and the plaintiffs; they are the real parties to the controversy. There is throughout the controversy and at every stage of it direct conflicts of interest between the plaintiffs and the union.[6]

The question here is: Shall the rights of the plaintiffs, based upon a legal statutory right, be committed for determination to a quasi-judicial tribunal, selected by its adversary, before which it is represented exclusively by its adversary, and whose decision, even if based on error of fact or law, is final and conclusive? Can it be said logically or fairly that in such circumstances the plaintiffs and their rights would have fair representation before a tribunal of "austere indifference and impartiality"[7] as contemplated under traditional canons of due process and elementary fairness?[8] Is this not a case such as Mr. Justice White clearly envisaged in the *Vaca* case, where the grievance procedures "devised" between union and employer are "unsatisfactory or unworkable for the individual grievant(s)"? The Courts have repeatedly said that the union owes to all employees the duty "of representing their interests fairly and impartially". Wallace Corp. v. National Labor Relations Board (1944) 323 U.S. 248, 255, 65 S.Ct. 238, 242, 89 L.Ed. 216, reh. den. 324 U.S. 885, 65 S.Ct. 682, 89 L.Ed. 1435. In its representation, it must act with "complete good faith and honesty of purpose." Ford Motor Co. v. Huffman (1953) 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048. How can the union in this case "fairly and impartially" and with "complete good faith and honesty of purpose" represent the plaintiffs when its (the union's) interests are adverse to the claims of the plaintiffs?

The real issue in these cases is the validity of a provision of the collective bargaining agreement, which unquestionably was inserted in the agreement at the instance and on the demand of the union. The actual beneficiary of the challenged provision is an affiliate of the union. The ones to lose if the provision is upheld, are the plaintiffs and others in like position. To restate the matter: Should such issue be resolved by a tribunal, in the appointment of which the union, but not the plaintiffs, exercises a right of selection, and before which the challenge to the validity of the contract provision is exclusively vested in the very author of the questioned provision?

I have found no case on all-fours with that posed here. There are a number of cases in which the union, holding exclusive bargaining rights under a collective bargaining agreement, was hostile to the assertion of the individual employee's claim and, because of such

6. See, U.C.L.A.Law Rev. 603, at p. 628 (1959): "Often the substantial interests of the individual employee and the union diverge. At this point it is difficult for the union to adequately represent the individual's interests. This may occur when he is a non-union member of the collective bargaining agreement."

Of similar import is the language of Chief Judge Sobeloff in Thompson v. Brotherhood of Sleeping Car Porters (C.C.A.4, 1963) 316 F.2d 191, at p. 199, s. c. 367 F.2d 489: " * * * disparate treatment in representation cannot be tolerated when based on the disadvantaged individual's or group's non-membership in the statutory bargaining agent."

7. Roosevelt & Frankfurter, Freedman, Ed. p. 80 (1967).

8. On issue of due process as it arises in this connection, see Fleming, Some Problems of Due Process and Fair Procedure in Labor Arbitration, 13 Stanford L.Rev. 235; Rosen, The Individual Worker in Grievance Procedure; Still Another Look at the Problem, 24 Md.Law Rev. 233, at p. 287.

hostility, the individual employee was relieved of the burden of going through the presentation of his claim to unfriendly union representation in the arbitration. A leading case of this type is Hiller v. Liquor Salesmen's Union Local No. 2, supra, cited with approval in the *Vaca* case, supra, 386 U.S. at p. 186, n. 11, 87 S.Ct. 903. In that case, the Court said:

"It is true that the collective bargaining agreements contain arbitration clauses and that if this were simply a suit for wrongful discharge, the arbitration clauses would be available to the employers as a defense. Larsen v. American Airlines, Inc., 313 F.2d 599 (2d Cir. 1963); Henderson v. Eastern Gas and Fuel Associates, 290 F.2d 677 (4th Cir. 1961). But where the employee's case is based upon a conspiracy between his union and his employer to deprive him of his rights he cannot be forced to submit that issue to an arbitration between the employer and the union. Such a procedure would fail completely to settle the issues between the union member and his union."

In Woodward Iron Co. v. Ware (C.C.A. 5, 1958) 261 F.2d 138, a discharged employee, covered by a collective bargaining agreement between his union and employer, sued for damages for wrongful discharge without first exhausting grievance-arbitration procedures. He asserted the union was hostile to his claim. In upholding the employee's right to maintain such suit, the Court said (p. 142):

"If Goodson had filed a complaint, his grievance would have been processed—if processed—by representatives of a hostile union in agreement with the employer. The courts should be open to an individual employee to assert a common law action for damages when his alternative is to resort to grievance proceedings before arbiters already combined against him."

In Richardson v. Communications Workers of America (D.C.Neb.1967) 267 F.Supp. 403, the plaintiff sued, without first invoking the exclusive arbitration procedures for settlement of disputes provided in the applicable collective bargaining agreement, for breach of his employment contract. He excused his failure to invoke or "attempt to use" the arbitration proceedings by alleging that his discharge was effected through collusion between the union and his employer. The arbitration procedure—as here—vested the employee's representation exclusively in the union. In sustaining the plaintiff's right to maintain his action, the Court said (p. 405):

"If the facts alleged by plaintiff are true, which we must here assume, we cannot see that the plaintiff had any effective access to the contract grievance procedures."

A number of State Court decisions— none of which is quite as clear on conflict of interest as this case—support the view that the plaintiffs should not be forced to submit to an arbitration of what they claim was an accrued right to wages, protected by valid State law, prior to seeking vindication of their legal right in court. Thus, in Pattenge v. Wagner Iron Works (1957) 275 Wis. 495, 82 N.W.2d 172, the collective bargaining contract made arbitration as provided therein the "sole means of disposing of grievances". The plaintiffs, who had been discharged, as they contended, because they belonged to a rival union to the one having bargaining rights, were seeking vacation pay. They demanded the right to be excused from first invoking the arbitration proceedings because it was plain the union, to whose control their rights in arbitration were committed, was hostile to them. In sustaining the plaintiffs' rights to maintain their legal action without invoking contractual arbitration procedures, the Court said (82 N.W.2d p. 174):

"We do not construe the contract or the law as requiring an individual employee to invoke this grievance procedure to assert an accrued pecuniary claim in circumstances where it is reasonably apparent that the union is

hostile to him and will not give him adequate representation. To do so would place the employee's accrued rights against his employer more or less at the mercy of an unfriendly union."

■■ . Wade v. Southern Pacific Company (D.C.Texas 1965) 243 F.Supp. 307, is clearly distinguishable from the present case. In that case, the Court seems to have felt that a mere allegation of union hostility to a claim was not sufficient to permit a bypassing of the arbitration-grievance procedures provided in a collective bargaining agreement. It referred to the fact that, if such bypassing could be predicated on bare allegations of such a character "employees would always allege hostile discrimination on the part of the union in every contract interpretation suit * * *." (243 F.Supp. at p. 312). There can be little dispute that such bare allegations of union hostility "unsupported by allegations of specific facts upon which the conclusions rest" are insufficient to warrant bypassing arbitration. Rumbaugh v. Winifrede Railroad Company (C.C.A. 4, 1964) 331 F.2d 530, 535, note 5. But the conflict of interest between the union and the plaintiffs in these cases does not rest on conclusory allegations; it is evident from the admitted record itself. The facts establishing such conflict are beyond controversy. There is no need to pursue the arbitration procedures in order to make such conflict "more plausible".

Frankly, it is difficult to see how the union could in good faith argue in the arbitration demanded by the defendants herein that a provision it had inserted in a contract was illegal; and yet that is what it would be obligated to do if the plaintiffs were to be fairly represented by the union in the arbitration. Cf. Jenkins v. Wm. Schluderberg-T. J. Kurdle Co. (1958) 217 Md. 556, 144 A.2d 88, 93. Under these circumstances it should be anticipated that, if the plaintiffs should not prevail in the arbitration (assuming the motion of the defendants were granted) they would thereupon institute an action predicated upon a breach by the union of its duty of fair representation. The existence of such duty is well-established and it covers any form of discrimination, whether because of race or, as in this case, non-union membership. Thompson v. Brotherhood of Sleeping Car Porters, supra. That its violation gives rise to a cause of action against both union and employer is equally well-settled. Humphrey v. Moore (1964) 375 U.S. 335, 350, 355, 84 S.Ct. 363, 11 L.Ed.2d 370, reh. den. 378 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655; Falsetti v. Local Union No. 2026, United Mine Workers (C.C.A. 3, 1966) 355 F.2d 658, 660–661; Williams v. Wheeling Steel Corporation (D.C.W.Va.1967) 266 F.Supp. 651, 654–655; Thrift v. Bell Lines, Inc. (D.C.S.C.1966) 256 F.Supp. 475, 478–479 (Thrift v. Bell Lines, Inc. (D.C.S.C.1967) 269 F.Supp. 214, on another point); Hill v. Aro Corporation (D.C.Ohio, 1967) 275 F.Supp. 482, 490. Such action, based on breach of the duty of fair representation, would necessarily involve the validity of the deduction made by the defendants, the very issue posed here. It would accordingly seem that the avoidance of a multiplicity of litigation of the same issue would support a denial of the motion of the defendants for an arbitration herein.

Finally, there is another unique feature about these cases, which raises a serious question whether they should be resolved finally and conclusively in an arbitration proceeding where the arbitrator is selected by the union and the employer and in which the union and employer would be the only parties-litigant. What is involved in these proceedings is the enforcement of a state statute, specifically authorized by Congress. Should the construction and application of such statute be committed finally to the determination of an arbitrator, selected by parties who, by the express provisions of their contract, profess a desire to avoid the restrictions imposed by such statute, especially where the parties to be heard before such arbitrator are limited to the unsympathetic union and the employer?

Even if the facts in these cases showed a clear violation of the South Carolina Right-to-Work Law, it would be possible for the arbitrator, hearing only what the union and the employer chose to present, to decide that the statute was not involved or was inapplicable and, even though erroneous, this decision of the arbitrator would be final. The real point in dispute in these cases is a legal one, involving the application of a state statute. It is doubtful that such a question should be resolved by what Justice Black described in his dissenting opinion in the *Maddox* case, supra, 379 U.S. p. 665, 85 S.Ct. p. 623, as "the comparatively standardless process of arbitration." Compare, Amalgamated Clothing Workers of America v. Ironall Factories Co. (C.C.A. 6, 1967) 386 F.2d 586, at p. 591.

It must be noted that, in passing on this motion, I am limited to the allegations in the pleadings and the collective bargaining agreement. In my comments herein I would not be understood as expressing an opinion on the ultimate facts as they may be established on trial. Nor would I suggest that the union would not endeavor to represent fairly the plaintiffs in arbitration. What I do hold is that the plaintiffs should not be required to submit their claims to an arbitration proceeding in which the exclusive representation of their claims is vested in a party whose own personal interests are adverse. As a matter of fact, any other conclusion, I think, would be to place the union in an invidious position. To relieve it from the duty of processing a claim to which it is unsympathetic is fair alike to it and to the plaintiffs.

Counsel for plaintiffs indicate that a large number of additional cases similar to the four involved herein will be filed if the motion herein is denied. Moreover, if my conclusions in denying the pending motion are in error this Court would be saved the burden of trying both the pending cases and those subsequently to be filed. I am of the opinion that this Order involves a question which will accordingly be determinative of the necessity of a trial herein and is a question about which there is substantial ground for difference of opinion. For that reason, I am of the opinion that an immediate appeal from this Order would materially advance the ultimate termination of this litigation as well as the other litigation that might follow. Further proceedings in this Court are thus stayed to permit an appeal to be taken from this Order. The application for such review to be made within ten (10) days after the date of this Order. 28 U.S.C.A. § 1292(b).

Motion of the defendants to stay proceedings pending arbitration is accordingly denied, and

It is so ordered.